In the Matter of the ESTATE OF Nellie May WILSON, Deceased.

Erma Jean PHIPPS, Appellant–Petitioner,

v.

Roberta K. WILSON, Executrix of the Alleged Last Will and Testament of the Deceased, Nellie May Wilson; and Roberta K. Wilson, Appellee–Defendant.

No. 48A05–9209–CV–329.

Court of Appeals of Indiana, Fifth District.

March 10, 1993.

Rehearing Denied May 17, 1993.

Richard F. Davisson, Davisson & Davisson, P.C., Anderson, for appellant-petitioner.

John E. Eisele, Schuyler, Eisele & Lockwood, Anderson, for appellee-defendant.

BARTEAU, Judge.

Nellie May Wilson died testate on December 6, 1990, leaving all of her net estate, worth nearly $500,000, to Roberta Wilson ("Wilson"), her niece by marriage. Wilson was named as executrix of the estate. Nearly a year after the will was probated, Erma Jean Phipps, Nellie's natural niece, challenged the will, alleging that it was unduly executed; that it was obtained under duress and by fraud; and that the decedent was of unsound mind when the will was executed. The trial court granted Wilson's motion to dismiss Phipps' complaint because it was not filed within five months after the will was probated. Phipps appeals, raising the following issues:

I. Whether the trial court abused its discretion in quashing Phipps' subpoena to depose Wilson;

II. Whether the trial court erred by striking affidavits filed by Phipps in opposition to Wilson's motion to dismiss;

III. Whether the trial court erred in dismissing the will contest; and

IV. Whether Ind.Code 29–1–7–4 is unconstitutional.

We affirm.

### FACTS

On March 13, 1990, Hobart Chandler, an investigator for Adult Protective Services, petitioned the Madison Superior Court for guardianship of Nellie's estate. The petition alleged that Nellie was unable to care for her financial affairs, that she suffered from periods of confusion and that she had poor short-term memory. Chandler estimated Nellie's estate to be worth about $300,000. Both Wilson and Phipps are listed on the petition as Nellie's nieces; however, Wilson is a niece by marriage and Phipps is Nellie's "natural" niece.[1] The petition for guardianship was supported by a letter from Dr. Begley, who stated that he examined Nellie and recommended that a guardian be appointed to handle her affairs. There is nothing in the record to indicate that a guardian was in fact appointed or that Nellie was found to be incompetent.

Nellie died on December 6, 1990. On December 11, 1990, Wilson petitioned for probate of Nellie's will and for the issuance of letters testamentary. Nellie's will was executed on March 16, 1990, three days after the petition for guardianship was filed. The court granted Wilson's petition on December 11.

Phipps filed her complaint challenging the will on December 27, 1991, over a year after the will had been probated. Wilson moved to dismiss the complaint for lack of subject-matter jurisdiction over the dispute. Before the hearing on Wilson's motion, Phipps subpoenaed Wilson to appear for deposition. Wilson moved to quash the subpoena and for a protective order preventing further attempts at discovery. The court granted Wilson's motion to quash, but took the request for a protective order under advisement. After a hearing, the court granted Wilson's motion to dismiss.

---

**1.** It is not clear from the record whether Nellie had any other living relatives.

## DISCOVERY

▮ Phipps argues that the trial court abused its discretion when it limited her ability to conduct pre-trial discovery. She argues that discovery was necessary to defend against Wilson's motion to dismiss. Wilson argues that the trial court did not abuse its discretion in quashing the subpoena.

▮ Indiana Trial Rule 26(C) grants the trial court discretion to make any order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. The trial court has broad discretion in ruling on a motion for such an order, and this court will interfere with the trial court's order only if an abuse of discretion is shown. *Geib v. Estate of Geib* (1979), 182 Ind.App. 377, 395 N.E.2d 336, 338.

Phipps cites *Templin v. Erkekedis* (1949), 119 Ind.App. 171, 84 N.E.2d 728, a malpractice action, in support of her argument that she should have been permitted to conduct discovery in the manner she chose. In *Templin*, this court held the trial court abused its discretion in granting plaintiff's request for an order protecting her from a physical examination requested by the defendant doctor. According to the court, it was an abuse of discretion to deny the defendant the only means of disproving plaintiff's claims of malpractice. Here, however, Phipps does not argue that the only way to obtain the sought-after information is through a deposition. Phipps had other means of discovery available, *see* T.R. 26, none of which she pursued. Therefore, we find no abuse of discretion. *See, Geib*, 182 Ind.App. 377, 395 N.E.2d 336.

## AFFIDAVITS

▮ In support of her opposition to Wilson's motion to dismiss, Phipps submitted the affidavits of Hobart Chandler, an investigator for Adult Protective Services who filed the guardianship petition, and of Greg Gregory, an officer of Star Financial Bank. Chandler averred that he was informed that Nellie had been found wandering the streets of Anderson. According to Chandler, when he visited her in her home,

Nellie did not know the day of the week and she was confused. (R. 164). Greg Gregory assisted Chandler in assessing Nellie's financial situation. He averred that when he talked to Nellie at her home, she was confused and had no idea of the value of her assets. The court granted Wilson's motion to strike the affidavits because they "are not relevant, not timely filed and expressed improper opinions and conclusions of law." (R. 178).

▮ The trial court may use affidavits in order to determine the existence or non-existence of facts which would bring the action within the court's subject-matter jurisdiction. *Cooper v. County Board of Rev. of Grant County* (1971), 150 Ind.App. 232, 276 N.E.2d 533. However, we agree with the trial court that the affidavits were not relevant to the motion to dismiss. Wilson argued that the court lacked subject-matter jurisdiction because Phipps' complaint was filed over five months after the will had been admitted to probate. Phipps countered by arguing that this time period should be tolled because Wilson fraudulently failed to inform Phipps of Nellie's death. The affidavits—which were addressed to Nellie's state of mind—are not relevant to the issue of whether Wilson acted fraudulently.

## MOTION TO DISMISS

▮ Phipps argues that the trial court erred in dismissing her complaint because Wilson's fraudulent actions tolled the running of the five-month period in which a will contest may be filed. Phipps alleges two instances of fraud: 1) Wilson's failure to notify Phipps, Nellie's only living blood relative, of Nellie's death; and 2) Wilson's fraud in inducing Nellie to leave her entire estate to Wilson. Wilson argues that she was not required by law to give notice to Phipps; therefore, her inaction could not be considered fraud.

▮ Pursuant to Ind.Code 29–1–7–17, any interested person may contest a will within five months after the date of the order admitting the will to probate. The right to contest a will is statutory, and if it

is not exercised within the allotted time period, it is lost. *Matter of the Estate of Brown* (1992), Ind.App., 587 N.E.2d 686; *Estate of Niemiec v. Niemiec* (1982), Ind. App., 435 N.E.2d 999. The five month limit prescribed by the statute is jurisdictional. *Niemiec*, 435 N.E.2d at 1001. Generally, failure to file a will contest within the five months will result in dismissal. *Id.* Dismissal will not result, however, where a plaintiff has been induced to refrain from a timely filing by a fraudulent misrepresentation of the defendant. *Id.; Carrell v. Ellingwood* (1981), Ind.App., 423 N.E.2d 630. "The fraudulent conduct must have been the efficient cause of the failure to timely commence the action, and all the other elements entitling the plaintiff to equitable relief must be present." *Carrell*, 423 N.E.2d at 635. Thus, in order to defeat Wilson's motion to dismiss based on fraudulent conduct, Phipps had the burden to show Wilson acted fraudulently and that the fraudulent conduct was the cause of her failure to timely file the complaint.

▪ The elements of actionable fraud are: 1) material misrepresentations of past or existing facts; 2) which misrepresentation is made with knowledge or reckless ignorance of the falsity; 3) which causes reliance to the detriment of the person relying. *Id.* Fraud may not be predicated on the nonperformance of acts which the defendant is not bound by law to do. *First Nat'l Bank of New Castle v. Acra* (1984), Ind.App., 462 N.E.2d 1345.

Indiana Code 29–1–7–5 provides, in relevant part:

A petition for the probate of a will and for the issuance of letters testamentary or for the appointment of an administrator with the will annexed, or for the appointment of an administrator, shall state:

(2) The name, age and place of residence of each heir, in the event the decedent left no will; *and the name, age and place of residence of each legatee and devisee, in the event the decedent left a will,* so far as such are known or can with reasonable diligence be ascertained by the personal representative;

(emphasis supplied). Under I.C. 29–1–7–7(b), the clerk of the court must then serve notice, by mail, of the estate administration to each heir, devisee, legatee, and known creditor "whose name and address is set forth in the petition for probate or letters."

Nellie left a will; therefore, Wilson was required to list only the legatees and devisees named in the will. Phipps is not a devisee or legatee of Nellie's will and Wilson was not required to list her in the petition for probate. Therefore, Wilson's failure to notify Phipps of Nellie's death cannot be considered fraudulent. *Acra*, 462 N.E.2d 1368. Further, there is no evidence that this alleged fraud was the proximate cause of Phipps' failure to timely file her complaint. In fact, Phipps admits that she was unable to file a complaint because of a serious illness and subsequent hospitalization.

▪ Phipps also argues that Wilson committed fraud in inducing Nellie to leave her entire estate to Wilson. She alleges that Wilson induced Nellie to believe Wilson was the natural object of Nellie's bounty. Even if Wilson did commit fraud relating to the execution of the will, this allegedly fraudulent conduct is in no way related to Phipps' failure to timely file her complaint. *See Niemiec*, 435 N.E.2d at 1001.

## DUE PROCESS

▪ Phipps argues that I.C. 29–1–7–4 is unconstitutional because it does not require notice to the decedent's heirs that the will has been admitted to probate. Phipps argues that she was entitled to notice because, as Nellie's only natural heir, she should have been able to contest the will. Further, she points out that her name and address were listed on the guardianship petition; therefore, Wilson and her attorney knew that Phipps was an heir. According to Phipps, because she did not receive notice, she was denied due process under the Fourteenth Amendment to the United States Constitution. Wilson argues that Phipps waived this issue by failing to comply with I.C. 34–4–10–11, which requires anyone seeking to have a statute declared void as unconstitutional must

serve the Attorney General. Alternatively, Wilson argues that Phipps, who was not named in Nellie's will, was not entitled to notice and was not denied due process.

■ We will first address Wilson's waiver argument. I.C. 34–4–10–11, cited by Wilson in support of this argument is part of the Uniform Declaratory Judgment Act and is not intended to apply to other civil proceeding. *See State v. Black* (1978), 177 Ind.App. 588, 380 N.E.2d 1261. As Phipps does not seek declaratory judgment, she was not required to serve notice on the Attorney General before attacking the constitutionality of I.C. 29–1–7–4.

■ When faced with a challenge to the constitutionality of a statute, we presume the statute is constitutional. This presumption continues until clearly overcome by a showing to the contrary. *Miller v. State* (1987), Ind., 517 N.E.2d 64; *Garrod v. Garrod* (1992), Ind.App., 590 N.E.2d 163. Indiana Code 29–1–7–4 permits any interested person or a personal representative named in the will to petition the court 1) to have a will probated; 2) for the issuance of letters testamentary; 3) for the appointment of an administrator if no executor is named in the will; or 4) for the appointment of an administrator if the decedent died intestate. This statute also provides:

> No notice that a will is to be offered for probate or that it has been probated shall be required.
> No notice of the filing of, and hearing on, the petition described in this section shall be given to, or served, upon any person.

Phipps contends the "no notice" provision is unconstitutional.

We note that I.C. 29–1–7–4 is not the only notice provision in our probate code. As previously discussed, a petition for probate and for letters testamentary filed pursuant to I.C. 29–1–7–4 must include, among other things, the "name, age and place of residence of each heir, in the event the decedent left no will; and the name, age and place of residence of each legatee and devisee, in the event the decedent left a will, so far as such are known or can with reasonable diligence be ascertained by the personal representative." I.C. 29–1–7–5.

As soon as letters testamentary or of administration have been issued, the clerk of the court must send notice to each heir, devisee, legatee and known creditor whose name and address are set forth in the petition. I.C. 29–1–7–7.

There is, however, no requirement in the probate code that notice be given to descendants, such as Phipps, who would be entitled to an intestate distribution but who have not been named in the will. Therein lies the rub. Phipps argues that because she would be entitled to an intestate distribution if the will were set aside, her right to contest the will is a property interest protected by the Fourteenth Amendment to the United States Constitution. As such, she was entitled to notice before she was deprived of that interest by virtue of the tolling of the five-month limitation of I.C. 29–1–7–17.

■ The Fourteenth Amendment prohibits any state from depriving "any person of life, liberty, or property, without due process of law." Thus, one claiming a violation of due process must show 1) that there has been state action and 2) that a protected property interest is involved. *Board of Regents v. Roth* (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *State ex rel. Dunlap v. Cross* (1980), Ind.App., 403 N.E.2d 885.

■ The question of whether the state's involvement with nonclaim statutes, such as I.C. 29–1–7–17, is sufficient to implicate state action was addressed by the United States Supreme Court in *Tulsa Prof. Collec. Services, Inc. v. Pope* (1988), 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565. At issue in *Pope* was whether creditors of an estate, who made a claim against the estate after the time period for such had expired, were entitled to personal notice that the estate was being administered. According to the Court, state action occurs because the nonclaim statute of the probate code is operative only after there has been significant state involvement, in particular, an application to the court to admit the will to probate and an order admitting the will to probate. Thus, the state action,

through the legal proceedings, triggers the start of the time in which the action must be brought. This involvement is significant and is sufficient state action to implicate the due process clause. *Id.*

The next question is whether Phipps has a protected property interest. She claims that her right to contest the will is a legally protected interest. Wilson argues that Phipps had only an expectancy interest, which is not entitled to constitutional protection. "Property interests, for the purpose of due process claims, are determined by reference to state law." *Lohorn v. Michal* (7th Cir.1990), 913 F.2d 327. The property interest may arise from statute, ordinance or contract. *Dunlap*, 403 N.E.2d 885.

Phipps does not cite any authority to support her claim that her right to challenge the will is a protected property inter-est, nor do we find any such authority.[2] Phipps has therefore failed to meet her burden of overcoming the presumption of constitutionality.

We note that throughout her argument, Phipps refers to herself as Nellie's "heir." In Indiana, an "heir" is defined as "those persons including the surviving spouse, who are entitled under the statutes of intestate succession to the real and personal property of a decedent on the decedent's death intestate, *unless otherwise defined or limited by will*." I.C. 29-1-1-3. Because Phipps was not named in the will, she is not an heir to Nellie's estate.

It has long been held in Indiana that the right to take property by devise and descent is a creature of statute. *Donaldson v. State ex rel. Honan* (1913), 182 Ind. 615, 101 N.E. 485. During the life of

---

2. Phipps does cite several cases from the United States Supreme Court in support of her argument; however, none of them are in point: In *Tulsa Prof. Collec. Serv. v. Pope* (1988), 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565, the Court held that known and reasonably ascertainable creditors of an estate are entitled to actual notice of the administration of the estate. In *Schroeder v. New York* (1962), 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255, the Court held that the petitioner was denied due process because she did not receive notice that her property was being condemned. Although she did not live on the property, her name and address were easily ascertainable from the county records. *Boddie v. Connecticut* (1971), 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113, holds that indigents may not be denied access to the courts to obtain a divorce based solely on their inability to pay court costs and fees. *Mullane v. Central Hanover Bank & Trust* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, holds that known beneficiaries of trust funds were entitled to personal notice that the trustee sought judicial settlement of the trust accounts. The Court also held that notice by publication was sufficient to notify beneficiaries whose interest or whereabouts could not with due diligence be ascertained and as to those whose interests were conjectural or future. It should be noted that in all of these cases, the interest involved was a present, vested interest.

Phipps also cites the following cases from other jurisdictions: *Pallazzi v. Estate of Gardner* (1987), 32 Ohio St.3d 169, 512 N.E.2d 971; *Smith by Young v. Estate of King* (1991), Miss., 579 So.2d 1250; *In re Estate of Barnes* (1973), 212 Kan. 502, 512 P.2d 387.

In *Pallazzi*, 32 Ohio St.3d 169, 512 N.E.2d 971, the court stated *in dicta* that the "ability to contest the will clearly amounts to a 'legally protected interest' entitled to constitutional protection." *Id.* at 172, 512 N.E.2d at 974. However, the issue was whether a *named* beneficiary of the decedent's will who did not live in Ohio was entitled to personal notice. The court held that Pallazzi had no standing to attack the statute because he had failed to allege facts to show that he did not receive actual notice of the decedent's death.

*Smith by Young*, 579 So.2d 1250, involved intestate administration. The decedent's widow, the administratrix of the estate, neglected to inform the court that her late husband had a child born out of wedlock. The child sued the estate to have paternity established beyond the ninety-day period after the decedent's death in which paternity could be established. The court permitted the paternity action, opining that the child would be entitled to an intestate share and the administratrix, who knew of the existence of the child, had a duty to use reasonable diligence to inform the court of the potential heirs.

The facts in the *Estate of Barnes*, 212 Kan. 502, 512 P.2d 387, are somewhat similar to the facts here in that the decedent left his estate to non-relatives. However, unlike Indiana law, Kansas law requires the administrator to name all of the known "heirs at law," devisees and legatees, in the petition for probate. The administrator named two of the ten "heirs at law" in the petition along with the devisees. The administrator later informed the court of the names and addresses of some of the other relatives. The relatives who were not named complained, and the court held that *under Kansas law* the "known heirs at law" included only those heirs whose existence and whereabouts could be reasonably ascertained.

the decedent, the interest in the estate, for those who would take by intestate succession as well as those named in the will, is a mere expectancy interest, *Scott v. Scott* (1958), 238 Ind. 474, 150 N.E.2d 740, not entitled to constitutional protection. *Board of Regents v. Roth* (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. The interest vests, if at all, at death, *Donaldson*, 182 Ind. 615, 101 N.E. 485, depending on whether, under the laws of this state, the person is entitled to a share in the estate. As already discussed, Phipps is not entitled to a share in the estate under Indiana law; therefore, she has no protected property interests for the purpose of her due process claim.

The decision of the trial court is AFFIRMED.

SHARPNACK, C.J., and CHEZEM, J. concur.