In the Matter of the Change to the Established Water Level of LAKE OF THE WOODS, in Marshall County, Indiana, Appellant–Plaintiff,

v.

Calvin RALSTON, Donald Andrews and Richard Bean, Appellees– Respondents.

No. 50A04–0009–CV–390.

Court of Appeals of Indiana.

May 3, 2001.

Martin R. Lucas, North Judson, IN, Attorney for Appellant.

Ralph R. Huff, Plymouth, IN, Attorney for Appellees.

## OPINION

HOFFMAN, Senior Judge.

Petitioner–Appellant Lake of the Woods Property Owners Association (the "Association") appeals the trial court's dismissal of its petition pertaining to the water level of Lake of the Woods, a natural public freshwater lake located in Marshall County, Indiana. We reverse and remand.

The Association raises three issues for our review, which we consolidate and restate as: Whether Ind.Code § 14–26–8 should be interpreted to afford the Association procedural due process before a final determination regarding the propriety of the petition is made.

In 1999, the Association filed its petition to request a change in the established water level of Lake of the Woods. The parties agree that the Association, which is made up of approximately 223 members who possess a freehold interest in real property upon or within ¼ mile of the shoreline of the lake, is authorized to file the petition pursuant to Ind.Code § 14–26–8–3.

The surface elevation of the lake was first set in 1948 at 803.85′ mean sea level datum (MSLD). Litigation over the surface elevation resulted in a 1992 settlement agreement adopted by and made the order of the Marshall Circuit Court. The court's order retained the 803.85′ MSLD elevation during the portion of the calendar year commencing May 15th and ending September 15th and required the lake to be drawn down a foot to a 802.85′ MSLD elevation during a period beginning September 15th and ending on May 15th.

In its petition, the Association alleged that significant changes to the lake had occurred since the 1992 settlement. These alleged changes included the construction of sanitary sewers at all homes on or near the lake, increased value of lakefront property, increases in recreational use, and a decrease in the intensity of agricultural activity on the lowest elevation property. The Association also alleged that lowering the water level during the winter season "is detrimental to … fish and wildlife resources that depend on the lake, and materially diminishes the property values of lake area community property owners." (R. 12). The Association sought to maintain the 803.85′ MSLD elevation throughout the year, a change in procedure that it alleged would need no construction work.

A remonstrance was filed in response to the petition by certain individuals with agricultural interests and also by certain individuals owning land within the watershed of the lake, but not within ¼ mile of the shoreline. A remonstrance was also filed by the Board of Commissioners of Marshall County. The Association does not question the authority of the remonstrators to challenge its petition.

The trial court appointed two viewers, the County Surveyor and a representative of the Department of Natural Resources (the "government viewers"), pursuant to

Ind.Code § 14–26–8–8, and two additional viewers, reputable freeholders who were Marshall County residents (the "citizen viewers"), pursuant to Ind.Code § 14–26–8–9. The trial court also issued an order that prohibited either the Association or the remonstrators from initiating contact with the viewers without permission of the court.

After inspecting the lake and adjoining property, the viewers ultimately issued an amended final viewer's report. The report set forth the history of prior determinations pertaining to the water level and the types of evidence that the viewers found to be relevant to their present determination. In the report, the viewers stated that they "visited the lake and inspected the water level control structure, tributary ditches, and a number of tile inlets." (Finding of Fact # 9, R. 124). The report also stated that "[the DNR representative] subsequently met with representatives of the Divisions of Soil Conservation and Fish and Wildlife to discuss the possible impacts of the proposal on the lake ecosystem and the natural resources of the lake." (Finding of Fact # 10, R. 124). The report further stated that the viewers "reviewed the United States Geological Survey water level records for Lake of the Woods for the period from 1945 through present." (Finding of Fact # 12, R. 125).

The viewers found that many tile inlets upstream of the lake were below the 803.85′ MSLD elevation. (Finding of Fact # 8, R. 124). They concluded that a permanent water level of 803.85′ MSLD would be injurious to farmers and others who have drain tiles discharging into the drains that feed into the lake and that some tile outlets would be permanently underwater at the higher level. (Conclusion of Law # 1, R. 125). They also concluded that the higher level would have a detrimental effect on the roads around the

lake. (Conclusion of Law # 2, R. 125). They further concluded that "[w]hile some [DNR] professionals believe there may be positive ecological benefits to maintaining the higher lake level year around, a more thorough understanding of lake ecology and hydrology would be necessary to make a more accurate determination of potential effects." (Conclusion Law # 3, R. 125).

The viewers filed their report with the trial court pursuant to Ind.Code § 14–26–8–18. The trial court then dismissed the Association's petition pursuant to Ind.Code § 14–26–8–19, which provides that the court shall dismiss the petition if the viewer's report indicates that the work proposed therein is "not practicable and of public need." At no time was the Association given an opportunity to (1) present written evidence in support of its petition to either the trial court or the viewers or (2) make its objections known to the viewers.

The Association contends that Ind.Code § 14–26–8, at least as apparently interpreted by the trial court and the viewers, resulted in the denial of the Association's petition without the benefit of the protections set forth in the Due Process Clause of the Federal Constitution and the analogous Due Course of Law Clause of the Indiana Constitution.[1] Specifically, the Association argues that it was denied due process because it was neither allowed to present evidence in support of its petition nor to cross-examine adverse witnesses. Accordingly, the Association asserts that the statutory procedure followed below deprived it of important real property rights.

The Due Process Clause and Due Course of Law Clause prohibit state action which deprives a person of life, liberty, or property without the "process" or "course of law" that is due, that is, a fair proceeding. *Indiana High School Athletic Association v. Carlberg*, 694 N.E.2d 222, 241 (Ind.1997). Thus, one claiming a violation of due process must show (1) that there was state action, i.e. a governmental involvement in the alleged deprivation and (2) that the state action resulted in the deprivation of a protected interest. *In re Estate of Wilson*, 610 N.E.2d 851, 856 (Ind.Ct.App.1993), *trans. denied, cert. denied, Phipps v. Wilson*, 510 U.S. 1072, 114 S.Ct. 879, 127 L.Ed.2d 75 (1994).

"Indiana courts have held that state action may be found if the State enforces activity which originates privately so long as a nexus exists between the government involvement and the particular activity being challenged or if evidence demonstrates that the State has become a joint participant in that activity." *Haimbaugh*, 653 N.E.2d at 106. In the present case, the Association contends that state action has occurred because Ind.Code § 14–26–8–8 provides for the appointment of government representatives as viewers. As noted above, the Marshall County Surveyor and a representative of the Department of Natural Resources were appointed by the trial court as viewers pursuant to the statute. It is clear from the findings of fact and conclusions of law that these government representatives were considered the "experts" on the question of water levels and that they functioned in the same manner as an administrative agency.

---

1. We have previously held that the Due Course of Law requirement of Article 1, Section 12 of the Indiana Constitution is analogous to the Due Process Clause of the Fourteenth Amendment to the Federal Constitution. *Haimbaugh Landscaping v. Jegen,* 653 N.E.2d 95, 104 (Ind.Ct.App.1995), *trans. denied.* Therefore, cases interpreting the federal constitution provision are useful in interpreting the state constitution. *Id.* at 105.

We conclude that their involvement constitutes state action.

▮ The Association contends that the interests involved in the present case are the property rights arising from their ownership of land. At common law, "riparian" rights were available to those freeholders who owned land that bordered a body of water. *Tuesburg Land Co. v. State,* 78 Ind.App. 327, 131 N.E. 530 (1921).[2] Public trust legislation has modified common law riparian rights by recognizing the public's right to preserve the natural scenic beauty of our lakes and to recreational values upon the lakes. *See* Ind.Code § 14–26–2–5.[3] Riparian landowners, however, continue to possess their rights with respect to a public freshwater lake, but their rights are now statutory and must be balanced with the public's rights. Ind.Code § 14–26–8–3 provides riparian owners the statutory right to file a petition to stabilize, raise, or establish and maintain the level of the lake by various means. The statute also expands the common law class of riparian owners by giving the right to petition for a change in lake water level to the owners of land within ¼ mile of the shoreline or water line of a lake. We hold that the statute codifies a recognized protected right that may not be impinged absent procedural due process.

▮ We now turn to the question of how to interpret Ind.Code § 14–26–8. We initially note that "[i]n our separation of powers democracy, the constitution empowers the legislative branch to make law." *Baldwin v. Reagan,* 715 N.E.2d 332, 337 (Ind.1999). Every statute stands before us clothed with the presumption of constitutionality unless clearly overcome by a contrary showing. *Id.* If there is more than one reasonable interpretation of a statute, at least one of which is constitutional, we will choose that interpretation which upholds the statute. *Id.* We will not presume that the legislature violated the constitution unless the unambiguous language of the statute requires that conclusion. *Freidline v. Civil City of South Bend,* 733 N.E.2d 490, 493 (Ind.Ct.App. 2000).

Our examination of Ind.Code § 14–26–8 discloses the following general procedure. As we have noted above, landowners such as those making up the membership of the Association may petition for the raising of the lake's water level. Ind.Code § 14–26–8–3. The petition must, among other things, "[d]escribe the nature of the work desired" and "[a]llege that the work is practicable and of public need." Ind.Code § 14–26–8–4. Within ten days after the filing of the petition, the clerk shall docket the petition and shall cause notice to be given at least thirty days before the date set for a hearing on the petition. Ind. Code § 14–26–8–7. The trial court determines the government viewers before the hearing and the two citizen viewers on the day of the hearing. Ind.Code §§ 14–26–8–

---

**2.** Strictly speaking, property owners with lands abutting a river or stream acquire "riparian" rights, while those with a shoreline on a lake or pond acquire "littoral" rights. However, the term "riparian rights" has been broadly interpreted to include the rights acquired by those whose shoreline touches a lake or pond. *See Hutner v. Kellogg,* 563 N.E.2d 1338, 1339 n. 1 (Ind.Ct.App.1990).

**3.** Ind.Code § 14–26–2–5(c) gives the public a vested right in the "preservation, protection, and enjoyment" of public freshwater lakes, as well as in the use of such lakes for "recreational purposes." Ind.Code § 14–26–2–5(d) gives the State "full power and control" of freshwater lakes, which it is held in trust for "use of all citizens of Indiana for recreational purposes." Ind.Code § 14–26–2–5(e) recognizes riparian owners' right to use freshwater lakes, and decrees that such right is not exclusive.

8 and 14–26–8–9. The hearing is on the "form of the petition," and any remonstrances on the merits of the petition, notice, or eligibility of any viewers must be filed within ten days after the hearing. Ind.Code § 14–26–8–11. If the trial court finds that the petition is "defective," it will dismiss the petition. Ind.Code § 14–26–8–12. If the petition is not found to be defective, the trial court makes an order referring the petition to the viewers. Ind. Code § 14–26–8–17(a). In the order, the trial court shall fix a time when the viewers will meet and make a final report. Ind.Code § 14–26–8–17(c). The viewers then (1) make a personal inspection of the proposed project described in the petition; (2) consider whether the project is practicable and is of public need; and (3) file a written final report within ten days from the time of inspection. Ind.Code § 14–26–8–18. As also noted above, the trial court is required to dismiss the petition if the viewers find that the proposed work is not practicable and of public need. Ind.Code § 14–26–8–19.

In the event that the viewers find that the proposed work is practicable and of public need, the trial court is required to direct the County Surveyor to prepare plans and specifications for the proposed project. Ind.Code § 14–26–8–20. The County Surveyor is required to make (1) a preliminary report, Ind.Code § 14–26–8–21; (2) an estimation of costs and assessment of benefits or damages, Ind.Code § 14–26–8–22; and (3) an apportionment of costs, Ind.Code § 14–26–8–23. The trial court then sets a date for a hearing on the surveyor's report, and on this date the surveyor is to be present at a place designated by court to "[h]ear all objections made to damages and assessments." Ind. Code § 14–26–8–26(a). The surveyor "may adjourn the hearing as necessary or to any other suitable or available room in the courthouse of the county that is consid-

ered necessary until all objections are heard." Ind.Code § 14–26–8–26(b). Thereafter, the surveyor is required to make a final report to the court. Ind.Code § 14–26–8–26(e).

It is clear that Ind.Code § 14–26–8 does not explicitly deprive the Association of its due process right to present written evidence or to have a hearing on its petition. Furthermore, we believe it was not the Legislature's intent to do so.

■■■ The question remains, however, as to what process is due. *See Howard v. Incorporated Town of North Judson*, 661 N.E.2d 549, 553 (Ind.1996). No matter what the nature of the property interest is, the process supplied by a statute must be constitutionally adequate. *Id.* Due process is a flexible concept that calls for such procedural protections as the particular situation demands. *Wilson v. Board of Indiana Employment Security Division*, 270 Ind. 302, 385 N.E.2d 438 (Ind.1979), *cert. denied*, 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101 (1979) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)). In order to determine the dictates of due process in a given situation, we must balance three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, along with the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Id.* (citing *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903).

As discussed above, the Association's members have a private interest in exercising a piece of the bundle of rights governing the use of their property. Specifi-

cally, the Association members have a particular interest in any benefits to their real property that a change in water level would bring. This interest is important in its specific effect on the Association members' real property, and it is, at the same time, an interest that is in a more general sense shared with the public.

■ The statutory procedure properly followed by the trial court in this case culminated in a final determination by the viewers based only upon the bare allegations of the petition, a short period of observation by the viewers, and communications between the government viewers and parties unknown to either the petitioners or the remonstrators. The procedure also involved two citizen viewers who presumably were not experts on water level concerns and two government viewers who may or may not have had an expertise in water level matters. It is a procedure that affords the viewers very little information as they define the parameters of their investigation, that requires the viewers to guess as to the bases for the petitioners' allegations, and that leaves the government viewers at a disadvantage as they consult with other government employees. In short, it is a procedure that contains a marked risk of an erroneous decision by the viewers. On the other hand, submission of written evidence by both the petitioners and the remonstrators before the viewers' investigation of the lake will increase the possibility that both the citizen viewers and the government viewers are fully informed. Furthermore, a hearing in which the viewers may hear objections to a proposed final report would increase the accuracy of the report.

The government is interested in establishing a water level which insures (1) that the public exercises its vested right to the preservation, protection, enjoyment, and recreational use of a public freshwater lake; (2) that the State exercises its duty as it holds and controls all public freshwater lakes in trust for the public; and (3) that riparian owners exercise their right to use of the lake to the fullest, responsible extent possible.[4] The procedure properly followed by the trial court produced a final report that listed eleven areas where there was a lack of information bearing on the ecological benefits of maintaining a higher water level year-around. A procedure which insures that the viewers are well-informed at the time they conduct their investigation and which allows for oral objections to a proposed final report would increase the chances that the final report would contain answers instead of questions and that the government's interest will be realized. Furthermore, the burden of a procedure that allows for the submission of evidence and the airing of objections is one that the legislature has already endorsed as workable. As outlined above, Ind.Code § 14–26–8–20 through Ind.Code § 14–26–8–26 set forth a similar procedure before the finalization of the County Surveyor's report.

■ For all of these reasons, we hold that a petitioner, in its effort to "[d]escribe the nature of the work desired" and to show "that the work is practicable and of public need," may append affidavits, exhibits, or other written materials to its petition under Ind.Code § 14–26–8–4. Any remonstrator may also append such written evidence to his or her remonstrance filed under Ind.Code § 14–26–8–11. We further hold that upon the filing of the viewer's proposed "final" report, the

---

**4.** See footnote 3 above for an outline of the goals of lake preservation as expressed in Ind.Code § 14–26–2–5.

trial court, as it did in the present case, shall inform the parties that the report has been filed and that the trial court will dismiss the petition upon a set future date. In the event that the petitioners wish to object to the report, they may file such objection with the trial court before the date of dismissal, and the trial court shall schedule a hearing in which the petitioners shall orally present their objections to the viewers.

Subsequently, if the viewers determine that their proposed final report shall stand, they shall file a statement requesting that the trial court dismiss the petition. If the viewers determine that the proposed final report shall be altered or amended, they shall file such altered or amended final report with the trial court. The trial court shall dismiss or grant the petition accordingly.

 The remonstrators contend that the Association waived its due process rights by not requesting that the trial court allow it an opportunity to file written evidence and/or to participate in a hearing. The remonstrators argue that the Association's attempt to raise the due process issue in a motion to correct errors was untimely. The Association responds that it was misled by the trial court's correspondence to a possible expert witness which indicates that a hearing would be held in which "all interested parties in this matter can see and hear [the expert witness'] testimony and counsel representing the opposing interest have an opportunity to ask you questions. All of which would be done in an open format." (R. 83). We agree that this letter, which was provided by the trial court to the Association, could be reasonably interpreted to mean that a hearing would be held before the trial court entered its order of dismissal. Accordingly, we hold that the Association did not waive its right to assert its due process rights.

We reverse and remand with instructions that the trial court vacate its order of dismissal and that the trial court give the Association and the remonstrators a reasonable time to provide written evidence to the viewers. In the event that the Association requests a hearing, the trial court is instructed to schedule a hearing and to further proceed in accordance with this opinion.

SULLIVAN and MATHIAS, JJ., concur.