APRIL GARCEZ, a Minor, By and Through Chicago Title and Trust Company, the Guardian of Her Estate, Plaintiff-Appellant, v. FRITZ MICHEL *et al.*, Defendants-Appellees.

First District (4th Division) No. 1—94—0926

Opinion filed June 28, 1996.—Rehearing denied August 2, 1996.

CAHILL, J., dissenting.

John J. O'Leary, of David J. DeJong & Associates, Ltd., of Chicago, for appellant.

Williams & Montgomery, Ltd., of Chicago (Lloyd E. Williams, Jr., and Manya Pastalan Grant, of counsel), for appellees Fritz Michel and Michel-Picken Associates, S.C.

Bresler, Harvick & Glenn, of Chicago (Kevin J. Glenn, of counsel), for appellees Keith Knapp, Sr., and Knapp Medical Center, Ltd.

JUSTICE THEIS delivered the opinion of the court:

The plaintiff, April Garcez (April), through her guardian, Chicago Title and Trust Company (Trust), sued defendant physicians to recover damages arising from their alleged medical negligence in connection with her birth. Prior to trial, plaintiff settled with defendant Mercy Hospital and Medical Center (Mercy), resulting in the dismissal of several codefendants from the action. During the course of the trial, the court permitted defense counsel to reveal the existence of the settlement agreement. The jury rendered its verdict in favor of defendants, and plaintiff appealed.

On appeal, plaintiff alleges the following errors: (1) the trial court failed to grant its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial; (2) the trial court improperly denied its motion *in limine* to bar any reference to the settlement agreement; (3) defense counsel's comments during closing argument prejudiced plaintiff; and (4) the trial court erred in barring plaintiff from exhibiting her injuries to the jury. Because we find that the trial court abused its discretion in permitting reference to the settlement agreement, we reverse and remand for a new trial.

In 1987, Colleen Chaplain (Chaplain) was an expectant mother receiving prenatal care from Dr. Keith Knapp, Sr. (Dr. Knapp). Dr. Knapp was Chaplain's personal physician, not a certified gynecologist or obstetrician, with delivery privileges at Mercy. Dr. Knapp incorrectly assessed Chaplain's delivery date to be May 22, 1988.

On April 14, 1988, Chaplain was admitted into Mercy for the delivery of her child. She was treated by two obstetrical residents, Dr. Stewart Kernes (Dr. Kernes) and Dr. Harshavadan Vyas (Dr. Vyas), and Nurse Erlinda Azcona (Nurse Azcona). Dr. Kernes consulted Dr. Knapp about Chaplain's pregnancy, who directed Dr. Kernes to contact board-certified obstetrician and gynecologist Dr. Fritz Michel (Dr. Michel). Though Chaplain's pregnancy was in full

term, Dr. Kernes incorrectly believed she was experiencing premature labor.

After consulting with the residents over the phone, Dr. Michel directed the residents to administer drugs to slow the progression of premature labor. Chaplain's labor, however, continued and she complained of severe pains. Chaplain's response was consistent with the occurrence of placental abruption, a condition in which the placenta tears away from the uterus and disrupts the flow of oxygen to the fetus.

In the complaint, plaintiff alleged that the defendants' negligence prevented them from diagnosing Chaplain's condition and ordering a Caesarean section in a timely fashion. Plaintiff claimed that as a result of this negligence, April suffers from severe central nervous system damage and cerebral palsy. Plaintiff sued Mercy, Dr. Knapp, Dr. Michel, Dr. Kernes, Dr. Vyas, and Nurse Azcona.

Prior to trial, plaintiff entered into a settlement agreement with Mercy, releasing defendants Dr. Kernes, Dr. Vyas and Nurse Azcona from the suit. The case proceeded against Dr. Knapp and Dr. Michel. Plaintiff moved to bar evidence of the settlement agreement at trial. At a hearing, the trial court denied plaintiff's motion, ruling that defendants did not need to show that the agreement had the potential to bias the witnesses' testimony in order to reveal its existence. While the ruling allowed defendants to cross-examine the previous defendants as to their bias, the court prohibited defendants from inquiring about the settlement and negotiations for any other purpose.

During closing arguments, however, defense counsel made reference to the adequacy of the settlement amount in relation to April's damages. Without revealing the amount of the settlement, counsel stated that after receiving the settlement proceeds from Mercy, "this case should have been entirely dropped" and that "[t]here is no evidence that [April's] not getting cared for." Furthermore, the defense suggested that the settling defendants were truly responsible for April's injuries and "[m]aybe that's why they settled the case." Finally, counsel stated that plaintiff had a "novel theory *** I'm never going to use it, but I like it. *** Sue them, settle them, make them the star" witnesses against the remaining defendants, Dr. Knapp and Dr. Michel. After deliberations, the jury returned a verdict for defendants.

■ It is within the sound discretion of the trial court to determine whether questions concerning settlement and the former party status of a witness are appropriate. *Boey v. Quaas*, 139 Ill. App. 3d 1066, 487 N.E.2d 1222 (1986). As a general rule, however, matters concerning

settlement and negotiations are not admissible. *Barkei v. Delnor Hospital*, 176 Ill. App. 3d 681, 531 N.E.2d 413 (1988). Courts cite two primary concerns in prohibiting the admission of such evidence: (1) an agreement to settle does not constitute an admission of guilt and is therefore irrelevant; and (2) admitting evidence of settlements and negotiations would contravene public policy by discouraging litigants from settling before trial. *Barkei v. Delnor Hospital*, 176 Ill. App. 3d 681, 531 N.E.2d 413 (1988).

Defendants correctly note, however, that inquiries into the motives or bias of a witness are appropriate in order to test his or her credibility. *Boey*, 139 Ill. App. 3d 1066, 487 N.E.2d 1222. The Illinois Supreme Court has recognized "[i]f an extrajudicial agreement has the potential to bias a witness' testimony as to a relevant issue, disclosure is necessary to maintain the fairness and integrity of our judicial system." *Batteast v. Wyeth Laboratories, Inc.*, 137 Ill. 2d 175, 184, 560 N.E.2d 315, 319 (1990).

Courts have determined that extrajudicial agreements which require prior litigants to testify in a certain manner or which create a financial interest for the witness in the successful outcome in the case have the potential to bias a witness' testimony. As such, the remaining defendants should be permitted to reveal the existence of the agreement to expose the witness' bias. See, *e.g., Batteast*, 137 Ill. 2d at 184, 560 N.E.2d at 319; *Eckley v. St. Therese Hospital*, 62 Ill. App. 3d 299, 379 N.E.2d 306 (1978).

In *Batteast*, the court permitted the defense to cross-examine a former defendant about his settlement with plaintiff where the agreement contained a clause requiring the former defendant to testify in a manner consistent with his deposition testimony. The court found that the agreement was not neutral, finding that the plaintiff obviously deemed the testimony to be beneficial when inserting the clause into the agreement. Because the witness' deposition was taken before the plaintiff named him as a party, the defense was not given the opportunity to examine this crucial witness at the deposition. Furthermore, the court found that this need to disclose the agreement was amplified by the fact that the witness' testimony was critical to the plaintiff's case. As the witness was contractually bound to testify in a certain manner, the defendant would have been prejudiced if he could not expose this bias to the jury.

Similarly, in *Eckley v. St. Therese Hospital*, 62 Ill. App. 3d 299, 379 N.E.2d 306, the court allowed the defense to cross-examine a witness about his loan receipt agreement with the plaintiff. Under the agreement, the plaintiff agreed to reimburse the settling defendants from the proceeds of the recovery at trial, but only if the recovery

exceeded a certain predetermined amount. The witness had a financial stake in the outcome of the case, as his recovery was contingent upon the plaintiff's success at trial. The court determined that because the agreement had the potential to bias the witness' testimony, the defendant would be prejudiced if the agreement was not revealed to the jury. Therefore, the court permitted the defense to expose the witness' bias by revealing the existence of his agreement with plaintiff.

■ Unlike the courts in *Batteast* or *Eckley*, the trial court in the instant case never made a threshold determination as to whether the agreement had the potential to bias the witnesses' testimony. The trial court merely stated that the defendants were entitled to cross-examine the witnesses about the settlement. In doing so, the trial court disregarded the policy concerns regarding settlement agreements, stating that it is for the trier of fact to determine credibility. While we agree that credibility determinations are properly left to the jury, we cannot agree that every settlement agreement involving nonparty, testifying witnesses has the potential to bias the witnesses' testimony. Rather, we find that the trial court should have made a threshold determination as to whether the agreement between plaintiff and Mercy had the potential to bias Dr. Vyas and Nurse Azcona's testimony. Therefore, we find that the trial court abused its discretion in ruling that the defendants were entitled to reveal the settlement agreement merely by virtue of its existence.

Furthermore, when weighing the parties' interests, we find that the plaintiff's interest in preventing the disclosure of the agreement outweighed the defendants' interest in revealing the agreement. Revealing the existence of the agreement prejudiced the plaintiff because it allowed defendants to insinuate that the plaintiff was already compensated for her injuries and that the prior defendants settled because they were the truly culpable parties. Such practices have the effect of discouraging settlement prior to trial.

We give little weight to the defendants' interest in revealing the agreement in the absence of evidence that the agreement had the potential to bias the witnesses' testimony. Unlike the agreements in *Batteast* and *Eckley*, the settlement agreement in the instant case did not contain a clause requiring the released defendants to testify, let alone to testify in a certain manner. Mercy could enforce the terms of the settlement agreement regardless of the witnesses' testimony at trial. From the dismissed defendants' position, the agreement created no motivating factor or discernable benefit to testify favorably for plaintiff.

While plaintiff concedes that the dismissed defendants agreed to

testify at trial as a condition of their dismissal, we do not believe that this is evidence of potential bias. This merely amounted to an oral promise by the dismissed defendants that they would be available to testify at trial. The two dismissed defendants that actually testified, Dr. Vyas and Nurse Azcona, were both subject to subpoena in Illinois. Significantly, plaintiff did subpoena both witnesses for trial.

In addition, the testimony offered by these witnesses was neither crucial nor particularly favorable to plaintiff. Both witnesses stated. that they had no independent recollection of Chaplain's delivery. Rather, they merely offered information from the hospital records and their own knowledge of general medical routines. The witnesses never criticized defendants or indicated that defendants deviated from the standard of care. As such, the instant case differs substantially from *Batteast*, where the settlement agreement required the previous defendant's testimony, which was critical to the plaintiff's case.

■ Finally, defense counsel's remarks in closing arguments constitute precisely the type of abuses which our supreme court sought to avoid in *Casson v. Nash*, 74 Ill. 2d 164, 384 N.E.2d 365 (1978). In closing arguments, defense counsel implied that the dismissed defendants only settled because they were the truly culpable parties. Counsel suggested that the plaintiff's conduct in suing Dr. Vyas and Nurse Azcona and then offering to settle with them was improper. Counsel then speculated that April's family should have been satisfied with the amount received from the settlement in light of her injuries.

These statements were not in any way related to the permissive purpose in admitting evidence of such agreements: revealing a witness' potential bias. Rather, they only served to prejudice plaintiff by insinuating that the settlement agreement was an admission of guilt and that the plaintiff should have been satisfied with the amount of the settlement. Such references were explicitly prohibited under both the trial court's order denying plaintiff's motion *in limine* and public policy.

We conclude that the agreement did not have the potential to bias the witnesses' testimony. Rather, only the plaintiff's interest in barring inferences of the settling defendants' guilt and the public policy of encouraging settlement agreements are present. As such, we find that the trial court abused its discretion in denying the

plaintiff's motion *in limine* to bar reference to the settlement agreement. We reverse and remand for a new trial.

Reversed and remanded.

O'BRIEN, J., concurs.

JUSTICE CAHILL, dissenting:
I respectfully dissent.
The record in this case reveals a precise *in limine* order entered after a hearing. The transcript of the hearing and the wording of the order make clear that the trial court was aware of the potential for prejudice to both sides when a plaintiff intends to call a dismissed defendant to testify. The hearing and the order are good examples, in my view, of the balancing the trial court is called upon to do when exercising discretion.

The trial court suggested a hypothetical question as an example of the limited inquiry permitted: "Were the former defendants dismissed from the lawsuit because their employer settled with the plaintiff?" This question, almost word for word, was the only one asked of the dismissed defendants that referred to the settlement agreement. Ironically, the dismissed defendants answered "yes." They admitted the lawsuits filed against them were dismissed only because their employer settled with the plaintiff.

The majority seems to suggest that unless a preliminary inquiry shows that a dismissed defendant has agreed to testify a certain way or will benefit from a judgment for the plaintiff, the potential for bias is too slight to overcome a policy that favors settlements and prohibits reference to them at trial. While the cases the majority cites are good examples of settling defendants who agreed to testify a certain way or would benefit from a judgment for the plaintiff, none of them hold that those are the only circumstances where the potential for bias may be explored. Nor do the cases suggest that a trial court, exercising discretion, make a detailed inquiry in search of bias before allowing cross-examination to explore the potential for bias. In my view, the circumstances under which the testifying defendant were dismissed from this lawsuit were more than adequate to allow limited inquiry into the settlement agreement.

*Batteast*, the most recent direction from the supreme court on the issue, as the majority notes, affirms a rule of law as well settled as the policy favoring settlement agreements: "If an extrajudicial agreement has the potential to bias a witness' testimony as to a relevant issue, disclosure is necessary to maintain the fairness and integ-

rity of our judicial system." *Batteast v. Wyeth Laboratories, Inc.*, 137 Ill. 2d 175, 184, 560 N.E.2d 315 (1990). This rule should not be interpreted as an exception to the general rule against mentioning settlement agreements. It is a rule that governs play in all trials, and, given the ingenuity often evident in settlement agreements, it should not be abandoned lightly.

The potential for bias in this case was forecast by the trial court's hypothetical question, later asked. Disingenuity is in the air when we conclude that there is no potential for bias when a doctor and a nurse are freed of personal liability in exchange for a settlement made by their hospital employer. And though the majority notes that their testimony was of no great help to the plaintiff, it should also be noted that they both testified that they had no independent recollection of the incidents leading to the plaintiff's injuries, though they were both present and attended the plaintiff at the hospital. As the trial court stated: "Whether or not they are actually biased is a question of fact for the jury."

One final point. The majority's discussion of the defense closing argument—as an example of the bias that can overwhelm a plaintiff when a settlement is revealed—omits a crucial part of the record. The first mention of the settlement in closing argument was made, not by the defense, but by the plaintiff's attorney, who also dwelled on the culpability of the dismissed defendants he had called as witnesses. It is well settled that a party in whose favor an *in limine* order is entered cannot violate the order and then argue prejudice if his opponent follows suit. See *People v. Miller*, 101 Ill. App. 3d 1029, 428 N.E.2d 1038 (1981). I would affirm.