In the Matter of the CHANGE TO the ESTABLISHED WATER LEVEL OF LAKE OF the WOODS IN MARSHALL COUNTY, Indiana.

No. 50A03–0405–CV–207.

Court of Appeals of Indiana.

Feb. 22, 2005.

Martin R. Lucas, North Judson, IN, Attorney for Appellant.

Ralph R. Huff, Jones Huff & Jones, Plymouth, IN, Attorney for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Petitioner Lake of the Woods Property Owners Association (the "Association") appeals the trial court's dismissal, after remand, of its petition pertaining to the water level of Lake of the Woods, a natural public freshwater lake located in Marshall County, Indiana. We affirm.

### Issues

The Association raises four issues on appeal, which we consolidate and restate as:

I. Whether the trial court committed reversible error on remand by reappointing the same panel of viewers that had decided the original action to determine whether the Association's petition was practical and of public need;

II. Whether the trial court's strict adherence to the procedures enunciated by another panel of this Court in *Lake of the Woods v. Ralston,* 748 N.E.2d 396, 404 (Ind. Ct.App.2001), *trans. denied,* deprived the Association of its due process rights under the federal and state constitutions; and

III. Whether the trial court erred by dismissing the Association's petition pursuant to Indiana Code Section 14–26–8–19 because the viewers' final report contained facts that were arbitrary, capricious, il-

legal, or unsupported by sufficient evidence.

### Facts and Procedural History

In a prior appeal, another panel of this Court summarized the relevant facts as follows:

In 1999, the Association filed its petition to request a change in the established water level of Lake of the Woods. The parties agree that the Association, which is made up of approximately 223 members who possess a freehold interest in real property upon or within 1/4 mile of the shoreline of the lake, is authorized to file the petition pursuant to Ind.Code § 14–26–8–3.[1]

The surface elevation of the lake was first set in 1948 at 803.85' mean sea level datum (MSLD). Litigation over the surface elevation resulted in a 1992 settlement agreement adopted by and made the order of the Marshall Circuit Court. The court's order retained the 803.85' MSLD elevation during the portion of the calendar year commencing May 15th and ending September 15th and required the lake to be drawn down a foot to a 802.85' MSLD elevation during a period beginning September 15th and ending on May 15th.

In its petition, the Association alleged that significant changes to the lake had occurred since the 1992 settlement. These alleged changes included the construction of sanitary sewers at all homes on or near the lake, increased value of lakefront property, increases in recreational use, and a decrease in the intensity of agricultural activity on the lowest elevation property. The Association also alleged that lowering the water level during the winter season "is detrimental to . . . fish and wildlife resources that depend on the lake, and materially diminishes the property values of lake area community property owners." The Association sought to maintain the 803.85' MSLD elevation throughout the year, a change in procedure that it alleged would need no construction work.

A remonstrance was filed in response to the petition by certain individuals with agricultural interests and also by certain individuals owning land within the watershed of the lake, but not within 1/4 mile of the shoreline. A remonstrance was also filed by the Board of Commissioners of Marshall County. The Association does not question the authority of the remonstrators to challenge its petition.

The trial court appointed two viewers, the County Surveyor and a representative of the Department of Natural Resources (the "government viewers"), pursuant to Ind.Code § 14–26–8–8, and two additional viewers, reputable free-

---

1. Indiana Code Section 14–26–8–3, which governs petitions to maintain lake levels, provides, in part:

 (a) If:
 (1) at least twenty percent (20%) of the owners of land abutting upon or within one-fourth (1/4) mile of the shoreline or water line of a lake;
 (2) the department; or
 (3) the board of commissioners of a county in which a lake is located;
 desire to stabilize, raise, or establish and maintain the level of the lake by means of a control dam or other structure, divert-ing water into or away from the lake, pumping water into or out of the lake, or other means, the landowners, department, or county commissioners may apply either separately or jointly for the construction, reconstruction, alteration, and rehabilitation of a control dam or other structure, the construction of pumping stations, the construction, reconstruction, repair, or recleaning of outlet or inlet ditches, or other means by filing a petition with the circuit or superior court of the county in which the greater or greatest area of the lake lies.

holders who were Marshall County residents (the "citizen viewers"), pursuant to Ind.Code § 14–26–8–9. The trial court also issued an order that prohibited either the Association or the remonstrators from initiating contact with the viewers without permission of the court.

After inspecting the lake and adjoining property, the viewers ultimately issued an amended final viewer's report. The report set forth the history of prior determinations pertaining to the water level and the types of evidence that the viewers found to be relevant to their present determination. In the report, the viewers stated that they "visited the lake and inspected the water level control structure, tributary ditches, and a number of tile inlets." The report also stated that "[the DNR representative] subsequently met with representatives of the Divisions of Soil Conservation and Fish and Wildlife to discuss the possible impacts of the proposal on the lake ecosystem and the natural resources of the lake." The report further stated that the viewers "reviewed the United States Geological Survey water level records for Lake of the Woods for the period from 1945 through present."

The viewers found that many tile inlets upstream of the lake were below the 803.85′ MSLD elevation. They concluded that a permanent water level of 803.85′ MSLD would be injurious to farmers and others who have drain tiles discharging into the drains that feed into the lake and that some tile outlets would be permanently underwater at the higher level. They also concluded that the higher level would have a detrimental effect on the roads around the lake. They further concluded that "[w]hile some [DNR] professionals believe there may be positive ecological benefits to maintaining the higher lake level year around, a more thorough understanding of lake ecology and hydrology would be necessary to make a more accurate determination of potential effects."

The viewers filed their report with the trial court pursuant to Ind.Code § 14–26–8–18. The trial court then dismissed the Association's petition pursuant to Ind.Code § 14–26–8–19, which provides that the court shall dismiss the petition if the viewer's report indicates that the work proposed therein is "not practicable and of public need." At no time was the Association given an opportunity to (1) present written evidence in support of its petition to either the trial court or the viewers or (2) make its objections known to the viewers.

*Ralston,* 748 N.E.2d at 398–99 (internal citations omitted).

On its first appeal, the Association argued that Indiana Code Section 14–26–8, as interpreted by the trial court and the viewers, resulted in the denial of the Association's petition without the benefit of the protections set forth in the Due Process Clause of the Federal Constitution and the analogous Due Course of Law Clause of the Indiana Constitution. In particular, the Association contended that it was denied due process because it was neither allowed to present evidence in support of its petition nor to cross-examine adverse witnesses. In response to these arguments, the *Ralston* court held that Indiana Code Section 14–26–8 does not explicitly deprive the Association of its due process right to present written evidence or to have a hearing on its petition. However, the court continued:

[T]he statutory procedure properly followed by the trial court in this case culminated in a final determination by the viewers based only upon the bare allegations of the petition, a short period of observation by the viewers, and com-

munications between the government viewers and parties unknown to either the petitioners or the remonstrators. The procedure also involved two citizen viewers who presumably were not experts on water level concerns and two government viewers who may or may not have had an expertise in water level matters. It is a procedure that affords the viewers very little information as they define the parameters of their investigation, that requires the viewers to guess as to the bases for the petitioners' allegations, and that leaves the government viewers at a disadvantage as they consult with other government employees. *In short, it is a procedure that contains a marked risk of an erroneous decision by the viewers. On the other hand, submission of written evidence by both the petitioners and the remonstrators before the viewers' investigation of the lake will increase the possibility that both the citizen viewers and the government viewers are fully informed. Furthermore, a hearing in which the viewers may hear objections to a proposed final report would increase the accuracy of the report.*

*Ralston*, 748 N.E.2d at 402–03 (emphasis added).

Accordingly, the *Ralston* court remanded the cause to the trial court with instructions to vacate the original order of dismissal, to "give the Association and the remonstrators a reasonable time to provide written evidence to the viewers," and,

in the event that the Association requests a hearing, to schedule a hearing in the matter.[2] *Id.* at 404. In so doing, the court observed:

[A] petitioner, in its effort to "[d]escribe the nature of the work desired" and to show "that the work is practicable and of public need," may append affidavits, exhibits, or other written materials to its petition under Ind.Code § 14–26–8–4.[3] Any remonstrator may also append such written evidence to his or her remonstrance filed under Ind. Code § 14–26–8–11.[4] We further hold that upon the filing of the viewer's proposed "final" report, the trial court, as it did in the present case, shall inform the parties that the report has been filed and that the trial court will dismiss the petition upon a set future date. In the event that the petitioners wish to object to the report, they may file such objection with the trial court before the date of dismissal, and the trial court shall schedule a hearing in which the petitioners shall orally present their objections to the viewers.

Subsequently, if the viewers determine that their proposed final report shall stand, they shall file a statement requesting that the trial court dismiss the petition. If the viewers determine that the proposed final report shall be altered or amended, they shall file such altered or amended final report with the

---

2. When the *Ralston* court discusses a "hearing," it does so in the context of a hearing on the objections to the viewers' report.

3. Indiana Code Section 14–26–8–4 discusses the contents of a petition.

4. Indiana Code Section 14–26–8–11 provides: The following have ten (10) days, exclusive of Sundays, from the date of the hearing on the form of a petition to file with the court a

remonstrance or an objection to the merits of the petition, notice, or eligibility of any of the viewers:

(1) A person named in the petition.
(2) A person who owns land abutting or within one-fourth (1/4) mile of the shoreline or water line of the lake.
(3) The department.
(4) The board of commissioners of a county in which the lake lies.

trial court. The trial court shall dismiss or grant the petition accordingly.

*Id.* at 403–04.

Armed with the guidance of *Ralston,* on remand, the trial court issued a scheduling conference that vacated the initial order of dismissal and gave the parties until July 31, 2002, to "file written evidence in the form of affidavits, exhibits or other written materials supporting their respective position." Appellants' App. at 136. Pursuant to this scheduling conference, on October 17, 2001, the Association filed a Motion for Disqualification of Viewers and for Admonishment Regarding Record Keeping and Applicability of Open Door Law, wherein it alleged that the prior panel of viewers had been tainted by the deficient procedures employed in the original action, which led to the initial order of dismissal. That same day, the Association moved for a final hearing in accordance with the *Ralston* opinion. On November 5, 2001, the trial court denied the Association's motion to disqualify the viewers.

On July 31, 2002, the Association filed its documents, exhibits, and affidavits in support of its petition to restore the surface water of Lake of the Woods to 803.85' MSLD. Similarly, the Remonstrators filed two submissions of written evidence to the viewers, as well as a response to the Association's documentary evidence in support of the petition. One of the Association's submissions contained an appraisal report from Iverson C. Grove ("Grove"), which concludes that the Association's properties have "suffered a lower rate of increase in value due to the adverse water level situation than what would have occurred had the adverse condition not been present." *Id.* at 416.

On August 19, 2003, the trial court conducted a hearing, at which, viewers Larry Fisher ("Fisher"), Janet Trowbridge ("Trowbridge"), and Jack Greenlee ("Greenlee") "were called into Court and their qualifications to serve as Viewers and their ability to render a fair and impartial decision was reviewed." *Id.* at 12. Each testified that they would be neutral and impartial decision-makers. Subsequently, viewer James Hebenstreit ("Hebenstreit") reassured the trial court of his impartiality and ability to serve fairly as a viewer in this matter. Accordingly, the trial court reappointed Fisher, Trowbridge, Greenlee, and Hebenstreit as viewers.

On October 17, 2003, the viewers submitted their report, which concluded that "the original findings and conclusions of the amended viewers report shall stand and that the petition to change the established water level of the Lake of the Woods is *not* practicable and of public need." *Id.* at 19 (emphasis in original and capitalization omitted). In so doing, the viewers found, in relevant part:

6. Following the discussion the consensus was that while the information presented was related to water quality, sedimentation, property values, etc. there was no clear supporting professional opinion provided, including the appraisal report which lacked sufficient detail to tie the property values to the water levels, to demonstrate how a constant year around water level would benefit these issues.

*Id.* at 18.

On November 14, 2003, the Association requested a public hearing, in open court, on the issues of this cause. On February 24, 2004, the trial court conducted a hearing on the Association's objections to the viewers' report, at the conclusion of which, it gave the viewers until March 5, 2004, to either "file written notification that they stand by their report filed October 17, 2003, or file an amended or altered report." *Id.* at 13. The viewers affirmed

their report on March 5, 2004. On March 11, 2004, pursuant to Indiana Code Section 14–26–8–19, the trial court dismissed the Association's petition. This appeal by the Association ensued.

### Discussion and Decision

On appeal, the Association maintains that the trial court erred by dismissing its petition. In particular, the Association argues that: (1) the trial court committed reversible error on remand by reappointing the same panel of viewers that had decided the original action to rehear the petition; (2) the trial court's strict adherence to the procedures delineated in *Ralston*, 748 N.E.2d at 404, deprived the Association of its due process rights under the federal and state constitutions; and (3) the trial court erred by dismissing the Association's petition pursuant to Indiana Code Section 14–26–8–19 because the viewers' final report contained facts that were arbitrary, capricious, illegal, or unsupported by sufficient evidence. We separately address each argument.

### I. Reappointment of Viewers

The Association first contends that the trial court erred on remand when it reappointed Fisher, Trowbridge, Greenlee, and Hebenstreit to serve as viewers to rehear the petition because they were "tainted by prior proceedings held in violation of the Association's constitutional rights" and because "the remand proceeding should start fresh, with a newly appointed panel of viewers." Appellant's Br. at 12. At the outset, we observe that two of the viewers—i.e., Hebenstreit, a representative of the Indiana Department of Natural Resources ("DNR"), and Fisher, the surveyor of Marshall County—were appointed pursuant to Indiana Code Section 14–26–8–8. That statute provides, in relevant part:

Before the date set for the hearing, the names of the viewers of the proposed work described in the petition shall be determined as follows:

\* \* \* \* \*

(2) The director shall submit to the clerk the name of a representative of the department who will serve as a viewer.

(3) The surveyor of each county affected shall serve as a viewer.

As such, Fisher, as the county surveyor, was statutorily required to serve as a viewer on the Association's petition, regardless of whether such petition was in an original action or on rehearing. Hebenstreit, i.e., the DNR representative, however, was arguably not statutorily required to hear the Association's petition because, presumably, the DNR on remand could have submitted the name of another representative to serve as a viewer.

By contrast, Trowbridge and Greenlee were appointed as viewers under Indiana Code Section 14–26–8–9, which provides:

On the day set for the hearing on the form of a petition, the court shall appoint two (2) viewers who shall, with the viewers designated under section 8 of this chapter, pass upon the project as set out. The two (2) viewers appointed by the court:

(1) must be reputable freeholders;

(2) may not be qualified to sign the petitions;

(3) may not be related to an affected landowner; and

(4) must be residents of a county in which the lake lies.

Accordingly, Trowbridge and Greenlee were not statutorily required to hear the Association's petition and, indeed, could have been replaced by two other reputable freeholders provided that such persons satisfied the requirements of Indiana Code Section 14–26–8–9.

The issue of whether a panel of viewers, appointed under Indiana Code Sections 14–26–8–8(2) and 14–26–8–9, who heard the original petition to maintain the water level of a lake and concluded that such proposed work is not practicable and of public need, may hear the same petition on rehearing—which arose because the petitioner did not receive adequate due process during the original proceeding—appears to be one of first impression in Indiana. In deciding this issue, we note that, here, the viewers functioned in the same manner as an administrative agency.[5] *See Ralston,* 748 N.E.2d at 400.

In the context of an administrative proceeding, due process requires that a hearing be conducted before an impartial body. *Kollar v. Civil City of South Bend,* 695 N.E.2d 616, 623 (Ind.Ct.App.1998), *reh'g denied, trans. denied.* This requirement suggests that agency decisions may not be swayed by preconceived biases and prejudices. *Ripley County Bd. of Zoning Appeals v. Rumpke of Ind., Inc.,* 663 N.E.2d 198, 209 (Ind.Ct.App.1996), *reh'g denied, trans. denied.* Consequently, when a biased board or panel member participates in a decision, the decision will be vacated. *Id.* Nevertheless, because many administrative boards or panels are usually composed of persons without legal training, courts are reluctant to impose strict technical requirements upon their procedure. *Id.* Indeed, in the absence of a demonstration of actual bias, we will not interfere with the administrative process. *Id.* Instead, we presume that an administrative board or panel will act properly and without bias or prejudice. *Adkins v. City*

*of Tell City,* 625 N.E.2d 1298, 1303 (Ind.Ct.App.1993).

In the present action, the Association does not assert any bias, pecuniary interest, or other factually based disqualification for viewers Trowbridge, Greenlee, and Hebenstreit, nor does it "dispute that the viewers stated on the record that they would be fair and objective." Appellant's Br. at 13. Rather, its sole contention for disqualification is that the three viewers were tainted on remand because they had previously formed an opinion on the Association's petition during the original action, which was marred by deficient procedures. However, prior involvement in an investigation does not automatically bias or disqualify an administrative body, such as the viewers in the present case. *See Koeneman v. City of New Haven,* 506 N.E.2d 1135, 1138 (Ind.Ct.App.1987), *reh'g denied, trans. denied.* Because the Association has failed to demonstrate any bias on behalf of Trowbridge, Greenlee, and Hebenstreit and, further, because we presume that an administrative panel acted properly and without bias or prejudice, we find no error in the trial court's reappointment of the viewers on remand.

## II. Law of the Case

The Association next argues that the trial court's strict adherence to the procedures enunciated by the *Ralston* court deprived the Association of its due process rights under the Fourteenth Amendment of the United States Constitution and Article I, Section 12 of the Indiana Constitution. In *Ralston,* the court held that the due process clauses of

5. In its appellant's brief, the Association maintains that the viewers' function under Indiana Code Sections 14–26–8–8 and 14–26–8–9 is more analogous to that of a jury than an administrative agency. We do not address this contention, however, because the *Ralston* court determined—and, thus, it is the law of this case—that the viewers functioned in the same manner as an administrative agency. *See infra* Part II (discussing the law-of-the-case doctrine).

both the federal and state constitutions applied to the controversy at issue and, thus, it determined the appropriate process due the Association. In particular, according to *Ralston*, the United States and Indiana Constitutions contemplate a due process procedure, under the circumstances of this case, whereby both the Association and the remonstrators are able to submit written evidence to the viewers before their investigation of the lake. *Ralston*, 748 N.E.2d at 403. In addition, the Court observed that a hearing in which the viewers may hear objections to a proposed final report would increase the accuracy of the final report. *Id.*

With this process in mind, the *Ralston* court instructed that, on remand, the trial court must give the Association the opportunity to append affidavits, exhibits, or other written materials to its petition under Indiana Code Section 14–26–8–4, in an effort to describe the nature of the work desired and to demonstrate that such work is practicable and of public need. *Id.* The trial court must also allow any remonstrator to append such written evidence to his or her remonstrance filed under Indiana Code Section 14–26–8–11. The *Ralston* court further held that, upon the filing of the viewer's proposed final report, the trial court should inform the parties that the report has been filed and that the trial court will dismiss the petition upon a set future date. *Id.* at 403–04. In the event that the Association wishes to object to the report, the trial court must provide it the opportunity to file such objection before the date of dismissal and, further, must schedule a hearing in which the Association shall orally present its objections to the viewers. *Id.* at 404. Subsequently, if the viewers determine that their proposed final report shall stand, they shall file a statement requesting that the trial court dismiss the petition. *Id.* If the viewers determine that the proposed final re-

port shall be altered or amended, they shall file such altered or amended final report with the trial court. The trial court shall dismiss or grant the petition accordingly. *Id.*

 In its appellant's brief, the Association concedes that the trial court on remand followed the procedures outlined in *Ralston*. It argues, however, that these procedures were deficient under the federal and state constitutions. Appellant's Br. at 24. The law-of-the-case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and substantially the same facts. *Cha v. Warnick*, 476 N.E.2d 109, 114 (Ind.1985), *reh'g denied, cert. denied*, 474 U.S. 920, 106 S.Ct. 249, 88 L.Ed.2d 257 (1985). The purpose of the doctrine is to minimize unnecessary relitigation of legal issues once they have been resolved by an appellate court. *State v. Huffman*, 643 N.E.2d 899, 901 (Ind.1994), *reh'g denied; see also St. Margaret Mercy Healthcare Ctrs., Inc. v. Ho*, 663 N.E.2d 1220, 1223 (Ind.Ct.App. 1996). Accordingly, under the law-of-the-case doctrine, relitigation is barred for all issues decided "directly or by implication in a prior decision." *Certain Northeast Annexation Area Landowners v. City of Fort Wayne*, 622 N.E.2d 548, 549 (Ind.Ct. App.1993), *reh'g denied, trans. denied.*

Here, it is the law of this case that the process given to the Association by the trial court, which is the same process enunciated in *Ralston*, was sufficient to satisfy the dictates of the Fourteenth Amendment of the United States Constitution and Article I, Section 12 of the Indiana Constitution. As such, on remand, the Association received all of the process that it was due under the federal and state

constitutions. Therefore, we find no error on this issue.[6]

### III. The Final Report

▆▆▆ Lastly, the Association contends that the trial court erred by dismissing the Association's petition pursuant to Indiana Code Section 14–26–8–19 because the viewers' final report contained factual findings that were arbitrary, capricious, illegal, or unsupported by sufficient evidence. Judicial review of an administrative decision is limited.[7] *Ind. Dep't of Envtl. Mgmt. v. Adapto, Inc.*, 717 N.E.2d 646, 649 (Ind.Ct.App.1999). Review of an agency's decision, such as the viewers' report in the case at bar, is confined largely to the agency record and the court may not try the case de novo or substitute its judgment for that of the agency. *Id.* Deference to the expertise of the administrative body is to be given by the reviewing court, and the decision should be reversed only if it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. *Id.* Additionally, we recognize that an action is arbitrary and capricious only where there is no reasonable basis for such action. *Id.* The challenging party has the burden of proving that an administrative action was arbitrary and capricious. *Id.*

▆▆▆ Finally, the reviewing court should neither substitute its judgment on factual matters for that of the agency, nor reweigh the evidence. *Id.* Rather, the evidence is considered in the light most favorable to the administrative proceedings, and the agency's action will not be disturbed as long as there is substantial evidence to support the determination. *Id.*

In the present case, the record demonstrates that, on remand, after reviewing the Association's and remonstrators' submissions of documentary evidence, as well as Grove's appraisal report, the viewers submitted to the trial court their final report, which concluded that "the original findings and conclusions of the amended viewers report shall stand and that the petition to change the established water level of the Lake of the Woods is *not* practicable and of public need." Appellant's App. at 19. Upon the Association's objection to the report, the trial court conducted a hearing, at which, the Association orally asserted its objections to the viewers' report. Unpersuaded by these objections, however, the viewers reaffirmed their final report of October 15, 2003. The trial court then dismissed the Association's petition pursuant to Indiana Code Section 14–26–8–19, which provides:

> If the viewers find that the proposed work is not practicable and of public need:

---

6. The Association asserts that the procedures employed by the trial court on remand, including reappointing Fisher, Trowbridge, Greenlee, and Hebenstreit as viewers, violated the "open courts" clause of the Indiana Constitution and the Indiana Open Door Law, i.e., Indiana Code Section 5–14–1.5. We do not address these allegations of error, however, because the trial court followed the procedure established by the *Ralston* court, which were adequate under the circumstances.

7. With respect to the proper standard of reviewing the viewers' final report, we note that the scope of review set forth in the Administrative Orders and Procedure Act ("AOPA") is the proper scope of judicial review for the actions of all governmental agencies, regardless of whether the formal requirements of the AOPA would otherwise apply. *See Bd. of Sch. Trustees of Muncie Cmty. Schs. v. Barnell by Duncan*, 678 N.E.2d 799, 805 (Ind.Ct.App. 1997).

(1) the viewers shall make a written report of the findings to the court; and

(2) the court *shall dismiss* the petition at the cost of the petitioners who own land abutting or within one-fourth (1/4) mile of the water or shoreline of the lake.

(Emphasis added).

The Association contends that the trial court's dismissal was improper because the viewers' findings are arbitrary, capricious, illegal, or unsupported by sufficient evidence. Specifically, the Association challenges Conclusions 1, 2, and 4 of the viewers' initial report of March 17, 2000, which was adopted in their final report of October 15, 2003 and their March 5, 2004, affirmation of the October report. The remonstrators counter that because the conclusions at issue were fully known to the Association at the time of its first appeal, the law-of-the-case doctrine precludes a relitigation of such issues in the present appeal.

■■■■■ Initially, we observe that the law-of-the-case doctrine only bars relitigation of the issues that were decided "directly or by implication in a prior decision." *Certain Northeast Annexation Area Landowners*, 622 N.E.2d at 549. Indeed, where new facts are elicited upon remand that materially affect the questions at issue, the court upon remand may apply the law to the new facts as subsequently found. *Fair Share Org., Inc. v. Mitnick*, 245 Ind. 324, 327, 198 N.E.2d 765, 766 (Ind.1964), *cert. denied*, 379 U.S. 843, 85 S.Ct. 82, 13 L.Ed.2d 48 (1964). When the additional facts distinguish the case factually from the case decided in the first appeal, the law of the case doctrine has no application. *Estate of Martin by Martin v. Consol. Rail Corp.*, 667 N.E.2d 219, 220 (Ind.Ct.App.1996).

■■■■ Here, because the *Ralston* court did not decide, either directly or by implication, whether the conclusions at issue were proper, the law-of-the-case doctrine is inapplicable and, therefore, does not guide our analysis.[8] Rather, we separately examine the propriety of the viewers' conclusions.

## A. Conclusion 1

■■■■ In finding for the that the Association's petition was not practicable and of public need, the viewers first concluded:

1. A permanent water level of 803.85 feet would be injurious to farmers and others who have drain tiles discharging into the drains that feed into the lake. Some tile outlets would be permanently underwater at the higher level.

Appellant's App. at 41. The Association challenges this conclusion inasmuch as it favors drainage tiles that were installed without permits, in contravention of Indiana Code Section 14–26–5–3.[9] The As-

---

**8.** We note, however, that, under the doctrine of res judicata, all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action. *Dawson v. Estate of Ott*, 796 N.E.2d 1190, 1195 (Ind.Ct.App.2003). Because we do not know definitively which issues were raised by the Association in the prior appeal—rather, we merely know which issues the *Ralston* court addressed—and because neither party relies upon the doctrine of res judicata, we decline to examine the issues raised in the present appeal under such doctrine.

**9.** Indiana Code Section 14–26–5–3 provides:
A person may not:
(1) locate, make, dig, dredge, construct, reconstruct, repair, or reclean; or
(2) order or recommend the location, establishment, construction, reconstruction, repair, or recleaning of;
a ditch or drain having a bottom depth lower than the normal water level of a lake

sociation further contends that Conclusion 1 effectively creates an easement for upstream landowners to use Lake of the Woods for drainage purposes.[10] However, the Association has failed to demonstrate that these drainage tiles were "illegally" installed and in violation of statute. Rather, its argument rests entirely upon the assertion that because the viewers, including a DNR representative and a county surveyor, failed to respond to the Association's allegations that the tiles at issue were installed in violation of the Ditch Act, i.e., Indiana Code Section 14–26–5–3, "it is presumed that the tiles were installed without permits, as no permits were produced." Appellant's Br. at 27. However, we remind the Association that the viewers did not bear the burden of producing any evidence or of negating any claims made by petitioners. Instead, pursuant to Indiana Code Section 14–26–8–18, the viewers are only required to: (1) make a personal inspection of the proposed project described in the petition; (2) consider whether the project is practicable and is of public need; and (3) file a report within ten days from the time of the inspection. Accordingly, because the Association presented no evidence that the tile outlets in question were installed illegally, i.e., in violation of the Ditch Act, it has failed to meet its burden of showing that Conclusion 1 is arbitrary and capricious or illegal.

██ Further, the Association has failed to demonstrate that Conclusion 1 is unsupported by sufficient evidence. Rather, our review of the documentary evidence reveals that area farmers who farm land, which is drained by the ditches that flow into the lake in question, depend upon the lowered lake level from September to May "so that the fields will be dry enough in the fall for harvesting and in the spring for planting crops." Appellant's App. at 380. In addition, neither party disputes that some existing tile outlets would be permanently underwater should the lake be maintained, year round, at 803.85 feet.

### B. Conclusion 2

██ The Association also takes issue with Conclusion 2 of the viewers' final report. Conclusion 2 provides: "A higher level could have a detrimental effect on the roads around the lake due to the accompanying higher water table it would bring." The Association asserts that this conclusion is too speculative and that "[e]ven if some negative impacts on roads might occur, without some effort to identify the negative effects, quantify them, and determine the cost of remedying the deleterious effects, a blank assertion of possible deleterious effects constitutes an arbitrary and capricious statement unsupported by substantial evidence." Appellant's Br. at 34.

██ Once again, however, we remind the Association that it bore the burden of proving that its proposed work was practical and of public need. The viewers are not obliged to prove or disprove anything with respect to the benefits or detriments of the proposed work. See Ind.Code § 14–26–8–18. In addition, our standard of re-

within one-half (1/2) mile of the lake without a permit from the department.

10. The Association also maintains that because Conclusion 1 grants the upstream landowners an easement to drain one foot of water out of the lake for eight months of the year, it is in violation of the takings clause of the Fifth Amendment to the United States Constitution. We find this argument unper-

suasive, however, because it was the 1992 settlement agreement, which was adopted by the Marshall Circuit Court, and not the viewers' final report, which mandated the 802.85' MSLD elevation during the period beginning September 15th and ending on May 15th. Accordingly, there is no present taking of the Association's property.

view requires us to give deference to the expertise of the administrative body, i.e., the viewers in this case. In that vein, we note that viewer Fisher is both the Marshall county surveyor and a professional land surveyor. In these capacities, Fisher has expertise in drainage systems and in determining how such systems affect road crossings. *See* Ind.Code § 36–9–27–71.[11] Indeed, Fisher possesses the requisite expertise to decide whether a higher lake level would have a detrimental effect on the roads adjacent to the lake. As such, the Association has failed to demonstrate that there is no reasonable basis for the viewers' Conclusion 2 and, thus, it has not met its burden of showing that the conclusion was arbitrary, capricious, illegal, or unsupported by the evidence.

### C. Conclusion 4

██ The Association further challenges Conclusion 4 of the viewers' final report. Conclusion 4 provides: "No data was available to assess that a lower water level during the 'off season' would affect the recreational uses of the lake." Appellant's App. at 42. The Association argues that this conclusion is arbitrary, capricious, illegal, or unsupported by sufficient evidence because the viewers only visited the lake on two occasions, i.e., March 8, 2000, and September 30, 2003, and, during both visits, the lake was "drawn down to 802.85" MSLD. Appellant's Br. at 34. Instead, the Association contends, the viewers should have visited the lake at a time when the lake was maintained at 803.85 feet MSLD. Indiana Code Section 14–26–8–18 does not

require the viewers to make numerous personal inspections of the proposed project at issue and we decline to impose such a requirement here. Thus, we will not find error in the final report solely because the viewers did not inspect the site at issue in the petition at a time dictated by the Association.

██ Moreover, we note that, regardless of when the viewers personally visited the lake in question, the Association had the opportunity to submit documentary evidence in an effort to show that the 802.85' MSLD would be detrimental to the recreational uses of the lakefront property. Here, the evidence discloses that the Association submitted affidavits and other documents to support its position that the lower lake level was harmful to the recreational uses of its property. Even with this evidence, the viewers found that maintaining the lake at 803.85' MSLD was not practical and of public need, relying, in part, upon Conclusion 4. In particular, the viewers noted, in relevant part:

> 6. Following the discussion the consensus was that while the information presented was related to water quality, sedimentation, property values, etc. there was no clear supporting professional opinion provided, including the appraisal report which lacked sufficient detail to tie the property values to the water levels, to demonstrate how a constant year around water level would benefit these issues.

---

**11.** Indiana Code Section 36–9–27–71 provides, in relevant part:

> When, in the construction or reconstruction of a regulated drain, the county surveyor determines that the proposed drain will cross a public highway or the right-of-way of a railroad company at a point where:
> (1) there is no crossing; or

> (2) the crossing will not adequately handle or will be endangered by the flow of water from the drain when completed;
> the county surveyor shall include in the plans the grade and cross section requirements for a new crossing, or the requirements for altering, enlarging, repairing, or replacing the crossing.

Appellant's App. at 18.[12] The Association has failed to prove that Conclusion 4 is arbitrary, capricious, illegal, or unsupported by evidence.[13]

For the foregoing reasons, we affirm the trial court's dismissal of the Association's petition.

Affirmed.

FRIEDLANDER, J., and DARDEN, J., concur.

**12.** The Association further contends that the viewers erroneously disregarded Grove's appraisal report because such report "lacked sufficient detail to tie the property values to the water levels, to demonstrate how a constant year around water level would benefit these issues." Appellant's App. at 18. The Association argues that, in so doing, the viewers failed to consider the value of its riparian property. We disagree, however, because in his deposition, Groves admitted that some of the data on which he relied in making his appraisal was erroneous and, further, that he did not examine other lakes that maintain a dual mean sea level datum. Accordingly, the viewers were free to determine that Grove's appraisal report lacked sufficient detail to tie the property values to the water levels of the lake.

**13.** The Association also argues that we should reject the viewers' final report because the proposal was practical and of public need. However, we are constrained by our standard of review, which requires us to confine our review of the agency's decision to the agency record and prohibits us from trying the case de novo or substituting our judgment for that of the agency. In the present case, because the Association has failed to demonstrate that the final report was arbitrary, capricious, an abuse of discretion, or otherwise not supported by the evidence, we will not reverse the report.