**Jay LYNN, Appellant–Defendant,**

v.

**WINDRIDGE CO–OWNERS ASSOCIATION, INC., Appellee–Plaintiff.**

No. 49A05–0407–CV–404.

Court of Appeals of Indiana.

July 14, 2005.

Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, P.C., Indianapolis, for Appellant.

John S. Keeler, Dana M. Lenahan, Baker & Daniels, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Jay Lynn appeals the trial court's order foreclosing on Jay's former condominium and ordering that it be sold. Specifically, Jay contends that another mortgage is superior to the judgment lien of appellee-plaintiff Windridge Co–Owners Association, Inc. (Windridge) and that Jay's execution of a quitclaim deed extinguished Windridge's right to certain unpaid fees. Jay also argues that the trial court abused its discretion in failing to rule on another party's motion to set aside a default judgment. Finding that the trial court acted properly and that Jay's actions evince a scheme to avoid obeying a judgment handed down by this court, we affirm the trial court and order Jay to pay Windridge's appellate attorneys' fees.

### FACTS

The underlying facts in this case, as previously determined by this court, are as follows:

the Windridge Horizontal Property Regime (Windridge) was established in 1975 and includes 221 condominium units located on the northeast side of Indianapolis. The Lynns own a condominium unit at Windridge and have lived there since 1979. As owners of a condominium unit, the Lynns are automatically members of the Association, which is a mutual benefit corporation incorporated pursuant to the Indiana Nonprofit Corporation Act (Act). The Association is governed by a Board of Directors (Board) and is responsible for maintaining the property and purchasing casualty insurance for the exterior condominium structures.

Services provided by the Association to its condominium owners are underwritten by assessments, which are levied fourteen times a year. The amount of each owner's assessment is based upon the square footage of the owner's condominium unit as a percentage of the total square footage at Windridge. According to the Association's Bylaws, the Board may levy a penalty of up to 25% for late payment of assessments. Effective March 1, 1995, the Board passed a motion to impose a late fee of $10.00 for payments more than six days overdue.

Sometime in 1993 or 1994, the Lynns obtained permission from the Association to add an extension to their condominium unit. Construction of this extension was completed in late 1994 or early 1995. Subsequently, in April 1995, the Association sent the Lynns a letter informing them that their condominium unit would need to be re-measured in order to adjust their assessment and incorporate the extension into Windridge. The letter also advised the Lynns that they would be responsible for the $200 re-measurement cost. As a result of the re-measurement, the Board advised the Lynns on May 5, 1995, that their assessment cost would be increased to reflect their additional square footage.

The Lynns disputed the Association's authority to increase their assessment due to the extension of their condomini-

um unit. They also asserted that the Association was responsible for maintenance costs for a sunroom they built in 1981. In addition, the Lynns engaged in a dispute with the Board regarding their dissatisfaction with certain maintenance services provided by the Association. Consequently, in 1995 the Lynns began offsetting the cost of such services from their assessment and paying late. They also refused to pay the $200 re-measurement cost. In 1996, the Lynns missed several installments and continued to refuse to pay the increased assessment costs. From April 1997 until the date of trial, the Lynns made no payments to the Association. Nevertheless, the Association continued to provide the Lynns with maintenance services and insurance coverage. In December 1997, the Board suspended the Lynns' voting rights for nonpayment of assessments. By the time of trial in November 1999, the Lynns owed the Association a total of $18,969.44, including $4,065 attributable to the increased square footage.

In September 1995, a contractor brought suit against the Lynns and Windridge to foreclose on a mechanic's lien in connection with improvements the contractor made on the Lynns' condominium unit in 1994. Windridge then filed a cross-claim against the Lynns alleging that they were liable to it for assessments, re-measure charges, late fees, and attorney fees. In response, the Lynns filed a counterclaim against Windridge, which the trial court dismissed before commencement of trial as sanctions for discovery violations. Nevertheless, at the bench trial on Windridge's cross-claim on November 8, 1999, the trial court permitted the Lynns to testify regarding their defenses for nonpayment, which included their assertion that they had a right to damages and to offset amounts owed to them

by the Association for various maintenance, repair, and replacement costs. Thereafter, the trial court issued special findings of fact and conclusions of law, and entered judgment in favor of the Association in the total amount of $26,859.44.

*Lynn v. Windridge Co–Owners Ass'n, Inc.,* 743 N.E.2d 305, 308–09 (Ind.Ct.App.2001), *trans. denied* (footnotes and citation omitted) (*Lynn I*). We affirmed the trial court's ruling, and remanded the case to the trial court solely so that the trial court could correct its damages calculation with respect to two months of compounded late fees.

After we remanded the case, Windridge learned that Sandra Lynn's father, Herbert A. Louis, and KeyBank National Association (KeyBank) held mortgages on the Lynns' condominium that were recorded after Windridge filed its cross-claim. On June 3, 2002, Windridge filed a motion to determine the final judgment amount and for leave to amend its cross-claim to add Louis and KeyBank as junior lienholders so that the relative priorities of all interested parties could be determined. On August 23, 2002, the trial court entered an order correcting its initial damages calculation and reiterating that Windridge's lien is foreclosed as a first and prior lien. The Lynns did not appeal.

On May 30, 2003, Windridge amended its cross-claim to add Louis and KeyBank as defendants. Windridge's attempt to serve Louis at the address that he provided to the Marion County Recorder failed; therefore, Louis was served by publication. Louis failed to respond to the cross-claim, so on August 19, 2003, Windridge filed a motion for default judgment that the trial court granted on August 21, 2003. On August 18, 2003, KeyBank released the Lynns from its mortgage, and on August 31, 2003, Louis released the Lynns from

his. On September 1, 2003, the Lynns granted a mortgage lien in favor of "HAL." [1]

On September 25, 2003, Louis filed a motion to set aside default judgment. Windridge objected, and, in responding to the objection, the Lynns revealed that on January 1, 2004, they executed a quitclaim deed in lieu of foreclosure to HAL,[2] and Louis accordingly admitted that "the interest of Herbert Louis is now moot." Appellant's App. p. 75–79. The Lynns later admitted that neither Louis nor KeyBank had an interest in the condominium. Appellant's App. p. 92–93.

On May 24, 2004, the trial court entered its amended order in favor of Windridge in the amount of $29,949.44. The order also provided that Windridge's lien was foreclosed as a first and prior lien. Jay filed a motion to reconsider on June 2, 2004, which the trial court denied on June 28, 2004. The trial court never ruled on Louis's motion to set aside the default judgment. Jay now appeals.[3]

### DISCUSSION AND DECISION

Jay argues that the trial court erred in awarding damages to Windridge. Specifically, Jay contends that Louis's mortgage—although recorded after Windridge assessed its fees and filed its cross-claim—is superior to Windridge's judgment lien and that the execution of the quitclaim deed in favor of HAL extinguished Windridge's right to the unpaid fees. Jay also argues that the trial court abused its discretion in failing to rule on Louis's motion to set aside the default judgment.

We note initially that any argument that Jay does not owe Windridge for the association dues is governed by the law of the case doctrine. This doctrine provides that an appellate court in a subsequent appeal is bound by the previous appellate tribunal's determination of a legal issue in the same case, given substantially the same facts. *In re Change to Established Water Level of Lake of Woods in Marshall County*, 822 N.E.2d 1032, 1042 (Ind.Ct.App.2005). Thus, relitigation is barred for all issues decided directly, indirectly, or by implication in a prior decision. *Id.*

Additionally, we will affirm a general judgment upon any legal theory consistent with the evidence. *Sizemore v. H & R Farms, Inc.*, 638 N.E.2d 455, 457 (Ind.Ct.App.1994), *trans. denied.* In making that determination, we will neither reweigh the evidence nor judge the credibility of witnesses. *In re Trust Created Under the Last Will and Testament of Mitchell*, 788 N.E.2d 433, 435 (Ind.Ct.App.2003). When reviewing a general judgment, we presume that the trial court correctly followed the law, and this presumption is one of the strongest presumptions applicable to our consideration of a

---

1. The record does not reveal, and Windridge notes that it is unaware of, the identity of HAL. Windridge further notes that "H–A–L are Louis's initials." Appellee's Br. p. 5 n. 5.

2. Interestingly, we note that although the Lynns executed a quitclaim deed in lieu of foreclosure to HAL, they have continued to live in the condominium. Along the same lines, we agree with Windridge that Lynn appears to have no further interest in this litigation other than that the condominium in which he resides is to be foreclosed upon and sold. We will address the substance of Lynn's argument, but note our substantial skepticism as to the propriety of this appeal.

3. Neither Louis nor HAL has appeared or intervened in this appeal. Additionally, on June 17, 2003, Sandra Lynn filed for personal bankruptcy, and as a result, any personal liability she had for Windridge's judgment has since been discharged.

case on appeal. *Sizemore,* 638 N.E.2d at 457.

■ Jay argues that certain provisions of the bylaws governing the relationship between Windridge and its residents render Windridge's judgment lien against Jay subordinate to the first mortgage held by Louis. Jay attempts to frame his argument in a way that avoids a problem with the law of the case doctrine: he "acknowledges his individual liability, but seeks to have the provisions of the bylaws regarding mortgage foreclosures be enforced." Reply Br. p. 1.

In essence, however, Jay's individual liability is *precisely* what he is contesting. Jay argues that the deed in lieu of foreclosure that the Lynns executed in favor of HAL extinguished Windridge's lien—and, conveniently, Jay's liability to Windridge—for the fees at issue. We note that HAL did not acquire his mortgage lien on the condominium until three years after the trial court's judgment was entered—two years after our decision in *Lynn I*—and HAL did not acquire the condominium by quitclaim deed until nearly four years after the trial court entered its judgment. We agree with Windridge that Jay's "argument that a quitclaim deed in lieu of foreclosure executed nearly four years after Windridge acquired a judgment lien on the Real Property acts to extinguish Windridge's lien rights is simply untenable." Appellee's Br. p. 12.

We determined over four years ago that Jay is liable to Windridge for the unpaid association fees. Although Jay tries to frame his argument creatively, in truth he is contesting the precise issue that we already resolved in *Lynn I.* Accordingly, the law of the case doctrine prevents Jay from contesting that liability.

■ Jay also argues that the trial court's order is improper because it fails to include HAL, who Jay contends is a necessary party. According to Jay, because HAL has not intervened in the action, the trial court's judgment may not stand. But HAL's interest in the condominium arose three years after the trial court entered its judgment ordering the foreclosure on the property. HAL had constructive—if not actual—knowledge of the judgment lien and these proceedings, and could have intervened below. He did not do so, and his identity has not even been revealed to Windridge. The failure to include an unidentified party whose alleged interest did not arise until years after Windridge obtained a judgment lien simply cannot be the basis for overturning the trial court's order.

■ Jay next argues that the trial court erred in failing to rule on Louis's motion to set aside the default judgment against him. Putting aside the question of whether Jay has standing to raise this argument, we note that the record clearly reveals that both Jay and Louis have admitted that Louis no longer has any interest in the property at issue. Indeed, Louis released the Lynns from his mortgage almost a year before the trial court issued its amended order. Although the trial court was somewhat remiss in not ruling on Louis's motion, any error was completely harmless because the issue "could not be more moot." Appellee's Br. p. 14. Accordingly, we decline to set aside the underlying order as a result of the trial court's failure to rule on Louis's motion.

■ It is apparent to us that Jay, Louis, and HAL have attempted to make an end-run around the trial court's original order and our opinion affirming it in *Lynn I,* even as they try to obfuscate their intentions with a series of arguments that amount to nothing more than smoke and mirrors. Such a legerdemain will not prevail. Moreover, in considering Jay's ac-

tions it is similarly apparent to us that he has attempted to pull the proverbial wool over the eyes of the judicial system: following *Lynn I* and the trial court's default judgment against Louis, Jay was released by Louis from his mortgage, granted a mortgage lien in favor of HAL, executed a quitclaim deed in lieu of foreclosure to HAL, and then continued to live in the condominium even as all three parties insisted that they were not responsible for paying the fees. After failing to prevail—again—in the trial court, Jay then appealed the judgment—again—to us. As a result of the nature of Jay's actions and refusal to comply with the rule of law, we direct the trial court to award appellate attorneys' fees for this subsequent litigation to Windridge.

The judgment of the trial court is affirmed and remanded solely for the calculation of appellate attorneys' fees to be awarded to Windridge.

KIRSCH, C.J., and BARNES, J., concur.