THE CITY OF LOVES PARK, Petitioner-Appellant, v. ILLINOIS LABOR RELATIONS BOARD STATE PANEL *et al.*, Respondents-Appellees.

Second District    No. 2—03—0020

Opinion filed October 10, 2003.

David J. Kurlinkus and Charles A. Criswell, Jr., both of Nicolosi & Associates, P.C., of Rockford, for petitioner.

Lisa Madigan, Attorney General (Gary S. Feinerman, Solicitor General, and Jerald S. Post, Assistant Attorney General, of counsel), and Jacalyn J. Zimmerman, of State Labor Relations Board, both of Chicago, for respondent Illinois Labor Relations Board.

Steven A. Davidson, Dale D. Pierson, and Bryan P. Diemer, all of Countryside, for respondent International Union of Operating Engineers.

JUSTICE BOWMAN delivered the opinion of the court:

The City of Loves Park (City) appeals a decision by the State Panel of the Illinois Labor Relations Board (Board) finding that the City committed an unfair labor practice by repudiating the terms of its collective bargaining agreement (Agreement) with the International Union of Operating Engineers, Local 150 (Union). The City sets forth four issues for review. In our view, the City's contentions can be consolidated into the following two issues: (1) whether the arbitration clause contained in the Agreement is legal and enforceable, and (2) whether the Board erred in finding that the City committed an unfair labor practice.

## BACKGROUND

The following statement of facts is taken in large part from the Board's written decision in this matter. At all relevant times, the Union was the exclusive representative of a bargaining unit of production and maintenance employees for the City's street and water depart-

ment. The Union and the City entered into a collective bargaining agreement that was effective from May 1, 1996, until April 30, 2000. At issue in this case is section 8.2 of the Agreement, which provides in relevant part that, "[i]n cases of discipline or discharge, an employee who files a grievance under this Agreement shall have no recourse to the City's Civil Service Commission, and the Commission shall not have jurisdiction to review a case regarding discipline or discharge."

On January 13, 2000, the City notified Union member David Turnrose that he would be placed on suspension beginning January 17, 2000, and that the City intended to file charges with the Civil Service Commission (Commission) seeking his discharge. The Union filed a grievance on Turnrose's behalf on February 1, 2000, and informed counsel for the City that the Union objected to processing the matter through the Commission. On February 8, counsel for the City acknowledged by letter that Turnrose had waived his right to a hearing before the Commission and that the City intended for the issue of Turnrose's discharge to be heard in only one forum.

Nonetheless, the Commission conducted a hearing on February 11 on the charges against Turnrose. The Union moved to dismiss the matter because Turnrose had opted for grievance arbitration rather than a hearing before the Commission. Pursuant to an agreement with the City's legal counsel, the Union waived its right to defend Turnrose before the Commission and allowed the Commission to render its decision following a brief prove-up by the City. The City, in return, agreed that it would not raise any procedural or collateral estoppel arguments in the grievance arbitration proceedings. The Commission then discharged Turnrose on February 11. The Union filed a grievance that same day.

The arbitration hearing commenced on September 26, 2000. At the hearing, the parties stipulated that the issue was whether Turnrose was suspended and discharged for just cause. They further stipulated that the grievance was properly before the arbitrator for a final and binding decision and that the procedural requirements were either satisfied or waived. On February 27, 2001, the arbitrator issued a decision sustaining the Union's grievance, concluding that the City did not have just cause to discharge Turnrose, and ordering the City to reinstate Turnrose to his former position with full seniority, back pay, and benefits.

Following the arbitrator's decision, the City's mayor, Darryl Lindberg, asked the City's attorney to review options for appealing the arbitrator's ruling. Mayor Lindberg was concerned with the legality of the grievance arbitration provision of the Agreement. Prior to the arbitrator's ruling, the City had decided that there was no reason to

look into the legality of this provision unless the arbitrator's ruling was unfavorable to the City.

The City filed a complaint for declaratory judgment in the Winnebago County circuit court on March 22, 2001, requesting the entry of orders holding that (1) the City, as a non-home-rule entity, does not have the authority to contract away the requirements of the Illinois Municipal Code (Code) (65 ILCS 5/10—1—1 *et seq.* (West 2000)), *and* (2) the arbitrator's ruling is void for lack of jurisdiction. The City refused to reinstate Turnrose and grant him back pay.

The Union then filed a charge with the Board, alleging that, by refusing to comply with the arbitrator's decision and challenging the validity of the arbitration clause in the circuit court, the City repudiated the Agreement and committed an unfair labor practice. The administrative law judge (ALJ) concluded that the City did commit an unfair labor practice in violation of sections 10(a)(1) and 10(a)(4) of the Illinois Public Labor Relations Act (5 ILCS 315/10(a)(1), (a)(4) (West 2000)). The City filed exceptions to the ALJ's recommended decision, and the Board subsequently adopted the ALJ's decision. The City filed a timely petition for review of the Board's decision.

## STANDARD OF REVIEW

Before reaching the merits, we must first address the proper standard of review. The City contends that our review is *de novo* because there are no disputed facts. The Board and the Union, on the other hand, argue that the appropriate standard is whether the Board's decision was clearly erroneous.

■ In *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191 (1998), our supreme court held that the applicable standard of review of an administrative agency's decision depends on whether the question presented is one of fact or law. A reviewing court will overturn an agency's findings of fact only if the agency's determinations are against the manifest weight of the evidence. *City of Belvidere*, 181 Ill. 2d at 204. An agency's determination of a question of law, however, is entitled to less deference and is reviewed *de novo*. *City of Belvidere*, 181 Ill. 2d at 205. The court in *City of Belvidere* further held that the appropriate standard of review for a mixed question of fact and law is the clearly erroneous standard. *City of Belvidere*, 181 Ill. 2d at 205.

■ The issue of whether section 8.2 of the Agreement is legal and enforceable involves interpretation of the Code and the Agreement, both of which are questions of law. *Department of Public Aid v. Brewer*, 183 Ill. 2d 540, 554 (1998) (construction of a statute is a question of law); *Gray v. Mundelein College*, 296 Ill. App. 3d 795, 803 (1998)

(construction of a contract is a question of law). Accordingly, we apply a *de novo* review to this issue.

We further conclude that the issue of whether the City committed an unfair labor practice constitutes a mixed question of fact and law, as the Board's determination involved examining the legal effect of a given set of facts, namely, the City's actions following the arbitration decision. Consequently, we will apply the clearly erroneous standard of review to the City's second issue.

## ANALYSIS

■ The City asserts that the arbitration provision in the Agreement was not legal and enforceable. That provision provides as follows:

"In cases of discipline or discharge, an employee who files a grievance under this Agreement shall have no recourse to the City's Civil Service Commission, and the Commission shall not have jurisdiction to review a case regarding discipline or discharge."

Section 10—1—18(a) of the Code provides as follows with respect to a municipality's ability to negotiate regarding arbitration of employment disputes as part of a collective bargaining agreement:

"Except as hereinafter provided in this Section, no officer or employee in the classified civil service of any municipality who is appointed under the rules and after examination, may be removed or discharged, or suspended for a period of more than 30 days, except for cause upon written charges and after an opportunity to be heard in his own defense. The hearing shall be as hereinafter provided, unless the employer and the labor organization representing the person have negotiated an alternative or supplemental form of due process based upon impartial arbitration as a term of a collective bargaining agreement. In non-home rule units of government, such bargaining shall be permissive rather than mandatory unless such contract term was negotiated by the employer and the labor organization prior to or at the time of the effective date of the amendatory Act, in which case such bargaining shall be considered mandatory." 65 ILCS 5/10—1—18(a) (West 2000).

The City contends that, under the Agreement, it was required to conduct a civil service hearing in order to terminate Turnrose, and only after that hearing did Turnrose have the option of seeking an arbitrator's review of the termination. The City further argues that the Commission's termination decision constitutes a final administrative decision that, pursuant to section 3—104 of the Administrative Review Law (735 ILCS 5/3—104 (West 2000)), is reviewable only by the courts. Consequently, the City maintains that the arbitrator lacked jurisdiction to review the Commission's decision that termination of

Turnrose's employment was proper. We find the City's argument untenable for the following reasons.

First, we disagree with the City's premise that under the Agreement the employee may seek arbitration only after the Commission has terminated his employment. Section 8.2 of the Agreement states that "[i]n cases of discipline or discharge, an employee who files a grievance under the Agreement shall have no recourse to the City's Civil Service Commission, and the Commission shall not have jurisdiction to review a case regarding discipline or discharge." The plain language of section 8.2 does not support the City's interpretation. It does not state that an employee must be officially discharged by the Commission before he may file a grievance. Instead, it discusses the effect of filing a grievance "[i]n cases of discipline or discharge." Under section 10—1—18(a) of the Code, a municipality must file written charges before it may discharge an employee. In our view, a fair and reasonable interpretation of section 8.2 is that, once a Union employee receives notice that the City intends to seek discipline or discharge, the employee may file a grievance. By doing so, the employee removes the matter from the Commission's jurisdiction. The provisions of section 8.3 of the Agreement, entitled "GRIEVANCE STEPS," support our interpretation.

Section 8.3 delineates a three-step grievance process. Under the first step, the employee may attempt to resolve the dispute with his or her immediate supervisor within the time period set forth in the Agreement. If the grievance remains unresolved after step one, the Union, on the employee's behalf, may submit a written grievance to the City's mayor. If the mayor denies the grievance, the Union may proceed to step three, which allows the Union to refer the matter to arbitration. The arbitrator's decision is final and binding upon the City, the Union, and the employee. Nothing in section 8.3 refers to any involvement by the Commission if the employee has elected to pursue the grievance process. Thus, contrary to the City's argument, the Agreement does not require a hearing and decision to terminate by the Commission prior to the filing of a grievance.

Consequently, the remainder of the City's argument unravels. Because Turnrose and the Union followed the proper grievance procedures in this case, the Commission did not have jurisdiction to review Turnrose's case. Therefore, the Commission's decision that Turnrose's termination was for just cause was not a valid "final administrative decision" for purposes of section 3—104 of the Administrative Review Law, which states in pertinent part that jurisdiction to review final administrative decisions is vested in the circuit courts (735 ILCS 5/3—104 (West 2000)).

■ The Administrative Review Law defines "administrative decision" as "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3—101 (West 2000). The Commission's decision cannot be said to have affected the parties' legal rights or to have terminated the proceedings between the parties when the Commission did not properly have jurisdiction over the proceedings. Accordingly, the arbitrator did not improperly review a final administrative decision when it heard Turnrose's grievance. The difficulty in this case was caused by the City's insistence upon proceeding with the hearing before the Commission after the Union had filed its initial grievance and had objected to going forward with any proceedings before the Commission.

The City also argues that the Board's determination that it committed an unfair labor practice was erroneous. The Agreement provides that the arbitrator's decision shall be final and binding on the parties. Nonetheless, the City refused to abide by the arbitrator's decision and filed suit in the circuit court seeking to void the arbitrator's ruling *and* to have section 8.2 of the Agreement declared invalid. The Board found that the City's actions amounted to wrongful repudiation of the award.

The City claims that it was, in good faith, exercising its right to appeal the arbitrator's decision in the only manner available to it. The Board found that, although the City had the right to seek to vacate the award, its attempt to have the grievance arbitration clause nullified and its refusal to comply with the arbitrator's decision and the grievance arbitration clause demonstrated contempt and disdain for the bargaining process and the public policies underlying the Act.

■ Section 10(a)(1) of the Act makes it an unfair labor practice for a public employer to interfere with a public employee's exercise of rights guaranteed under the Act. 5 ILCS 315/10(a)(1) (West 2000). Section 10(a)(4) provides that it is an unfair labor practice for a public employer to refuse to bargain in good faith with an exclusive representative. 5 ILCS 315/10(a)(4) (West 2000). When an employer's conduct demonstrates a disregard for the collective bargaining process, evidences an outright refusal to abide by a contractual term, or prevents the grievance process from working, that conduct constitutes repudiation and violates section 10(a)(4). See *City of Collinsville*, 16 Pub. Employee Rep. (Ill.) par. 2026, No. S—CA—99—056 (ISLRB April 18, 2000), *aff'd*, *City of Collinsville v. Illinois State Labor Relations Board*, 329 Ill. App. 3d 409 (2002).

■ Here, the City sought not merely to vacate the arbitrator's

decision regarding Turnrose's employment, but to retroactively nullify the entire bargained-for grievance provision and to deprive Turnrose of any meaningful due process. Under the specific facts of this case, we cannot say that the Board's decision was clearly erroneous.

## CONCLUSION

For the foregoing reasons, we confirm the Board's decision.

Confirmed.

McLAREN and GILLERAN JOHNSON, JJ., concur.