# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*County of Cook v. Illinois Labor Relations Board, Local Panel*, 2012 IL App (1st) 111514

---

| | |
|---|---|
| Appellate Court Caption | THE COUNTY OF COOK, Petitioner-Appellant, v. ILLINOIS LABOR RELATIONS BOARD, LOCAL PANEL, BEVERLY JOSEPH and LESLIE MITCHNER, Respondents-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-11-1514 |
| Filed | August 14, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An order of the Illinois Labor Relations Board finding Cook County guilty of an unfair labor practice for refusing to offer reinstatement to two employees at a juvenile detention center as a settlement after they were terminated for refusing to submit to background checks was reversed where the only evidence supporting that ruling was an inadmissible statement of a human resource employee, and even it that statement were admissible, it would have been insufficient to establish antiunion animus. |
| Decision Under Review | Petition for review of order of Illinois Labor Relations Board, Local Panel, Nos. L-CA-09-046, L-CA-09-099. |
| Judgment | Reversed. |

| Counsel on Appeal | Anita M. Alvarez, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Gregory Vaci, and Andrew J. Creighton, Assistant State's Attorneys, of counsel), for petitioner. |
| | |
| | Karmel Law Firm, of Chicago (Jonathan D. Karmel and Alexander G. Barney, of counsel), for respondents. |
| | |
| Panel | PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion. |
| | Justices Connors and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1     This case involves direct appellate review of a decision and order entered by the Illinois Labor Relations Board finding that Cook County was guilty of an unfair labor practice by refusing to offer one of two former employees reinstatement as a settlement offer during a settlement conference and, therefore, ordered both employees reinstated with back pay despite the fact that a final, binding union arbitration decision determined the employees were terminated for just cause. The employer, Cook County appeals.

¶ 2                                I. Background

¶ 3     In 2008, background checks were ordered for all employees and volunteers at the Cook County Juvenile Temporary Detention Center (JTDC). These background checks were one of the outcomes of a federal class-action complaint filed on behalf of the juveniles residing at the JTDC. The complaint alleged that the staff physically abused residents, that management failed to investigate and discipline the abusive staff and that services provided at the JTDC were constitutionally inadequate. A federal order was entered in 2007 appointing a transitional administrator (TA) for the JTDC to bring it into compliance with constitutional standards as agreed to by the parties. The federal order gave the TA broad authority to do this. The TA, in a goal of implementing the federal order regarding the JTDC, required that all staff members and volunteers who had contact with residents at the JTDC undergo background checks to uncover both criminal conduct and any history of child abuse or neglect.

¶ 4     Two employees/nurses, Beverly Joseph and Leslie Mitchner, were assigned to the JTDC. They were discharged for gross insubordination for refusing to authorize a "Child Abuse and Neglect Tracking System" (CANTS) background check, as well as a "Law Enforcement Automated Data Systems" (LEADS) criminal background check that were ordered by the TA. Both employees were given numerous opportunities to comply but steadfastly refused even though they were informed that termination was the penalty for refusal. Additionally, they were aware that they could have cooperated and subsequently file a union grievance

-2-

concerning their compliance with a background check without suffering any adverse action. This practice is commonly referred to as "comply and grieve." Instead, they both chose not to cooperate and were terminated.

¶ 5    Both employees grieved their discharges through their union. Pursuant to article XI of the collective bargaining agreement between the employees' union and Cook County, the employees' grievances on their termination was sent to binding arbitration. The arbitrator rendered an award in favor of the employer, Cook County, and found that the employer had just cause to discharge both employees because they had committed a "major cause" infraction. Both employees were found guilty of gross insubordination for failing to agree to cooperate with the required background checks.

¶ 6    The following excerpt from the arbitrator's decision summarizes the evidence against the two employees:

"The Grievants were given multiple opportunities to comply with the directive. The Employer did not act precipitously. The Grievants had many weeks to consider the matter and consult with others. Initially, they were given three weeks to provide the information, even though the task could be completed in a few minutes. When they failed to comply, they were given an additional 26 days in which to comply. They were given a reminder and a warning, and finally a choice–comply or face discipline, up to termination. They knew that if they did not comply, they would be barred from reporting to work. That fact alone should have told them that continued non-compliance made their discharge inevitable." *In re* Arbitration between Cook County, Illinois (Cermak/JTDC) & National Nurses Organizing Committee, at 28 (Opinion and Award Aug. 7, 2009).

¶ 7    Prior to the arbitration that resulted in a ruling upholding the discharges, a Cook County human resources employee met with a representative of the employees' union to attempt to settle a number of cases scheduled for arbitration, including these two discharges. At that settlement conference, the Cook County employee told the union he would be willing to reinstate Beverly Joseph but not Leslie Mitchner. There is no record of the terms of the settlement offer to reinstate Joseph or why the union refused the employer's reinstatement offer for Joseph. The record only reflects that Joseph was not reinstated as a result of the settlement offer. However, the union representative reported that she asked if the human resource employee was opposed to offering Mitchner reinstatement because she filed 14 or 15 grievances in a single day and that the Cook County employee answered "yes." Thereafter, the above-mentioned arbitration hearing was held upholding both terminations with findings of gross insubordination by the employees and just cause by the employer in taking the termination action.

¶ 8    Almost three months after the final, binding union arbitration decision that held the employer had just cause to discharge both employees, the Illinois Labor Relations Board (ILRB) consolidated Joseph's February 9, 2009 ILRB charge regarding her termination with Mitchner's June 10, 2009 ILRB charge of not giving her the same settlement offer of reinstatement as the one submitted to Joseph, and filed the instant complaint alleging that the employer had antiunion motivation in the actual discharge of the two employees. The ILRB used the single response made during the settlement conference by a Cook County employee

who was not involved in the discharges concerning the grievance as evidence of antiunion motivation for the discharge and for not offering to settle Mitchner's termination during a settlement conference where Joseph was offered reinstatement.

¶ 9    Following a hearing on the ILRB charge, the administrative law judge (ALJ) recommended that the employer, Cook County, be found to be motivated by antiunion animus when it initially discharged both Joseph and Mitchner. The ALJ also recommended that the same antiunion animus caused Cook County to refuse to offer reinstatement to both employees at the settlement conference without addressing how either employee had any right to a settlement offer of reinstatement. This recommendation did not address Cook County's offer to reinstate Joseph at the settlement conference. The sole basis for the ALJ's recommendation to reinstate both employees was the reported response given by the Cook County employee at the settlement conference to a question posed to him about Mitchner.

¶ 10    The ILRB three-member panel considered the ALJ's decision together with written comments by both parties concerning the recommendation. *Joseph*, 27 PERI ¶ 57 (ILRB Local Panel 2011). The ILRB panel rejected the ALJ's recommended ruling that both employees were initially discharged due to antiunion animus. Two members of the ILRB panel concurred with the ALJ's recommended ruling that both employees were not offered reinstatement at the settlement conference because of antiunion animus.

¶ 11    The third ILRB panel member, dissenting from the majority's decision regarding antiunion animus at the settlement conference, held the following:

"While I concur in my colleagues' determination that Respondent did not violate the Act by terminating Mitchner and Joseph because they refused to sign the background authorization forms, I must respectfully dissent from their determination that Respondent violated the Act by refusing to reinstate them. The majority makes this determination based entirely upon the statement purportedly made by Luis Martinez that he would not reinstate Mitchner because she had filed 14 grievances in a single day. More precisely, it is based upon witness testimony concerning a single statement made during settlement discussions by a person (apparently not involved in the decision to terminate Mitchner and Joseph) about an employee (Mitchner) who all agree had been insubordinate and who had, in fact, filed an inordinate number of grievances for which (because they had been filed in her capacity as a union member, not as a union representative) she had no grounds. I find the strength of this single bit of evidence insufficient to bear the Charging Parties' burden of demonstrating that Respondent's motive in refusing to reinstate Mitchner and Joseph was union animus, and I would have dismissed the complaint in its entirety." *Joseph*, 27 PERI ¶ 57, at 253 (Member Anderson, concurring in part & dissenting in part).

¶ 12    The majority's order provided no analysis regarding the employer's offer to reinstate Joseph. No analysis was made of how this single 2009 response by a Cook County employee not involved in the decision to terminate the two employees could be found to permeate the attitude of the Cook County officials responsible for the employees' discharge and decision not to offer reinstatement to Mitchner during the settlement conference. No analysis was made of the arbitrator's decision that found the employer had just cause to terminate both

employees and its legal effect on the ILRB or its decision. No analysis was provided as to how an employer could have antiunion animus when it did not offer reinstatement to a former employee who was not entitled to it as a matter of right. The panel's order did not discuss how or why it thought the absence of a settlement offer to reinstate Mitchner was an adverse employment action. It is plainly evident that an adverse employment action cannot occur by depriving a former employee of something she has no right to receive.

¶ 13     The response to a question posed by the union in 2009 during settlement negotiations was the only "evidence" submitted to demonstrate antiunion animus. The employer, Cook County, objected to the admissibility of the union representatives' recollection of the employee's response because it was made during the course of a settlement conference. The dissenting board member concluded that the single response was insufficient to meet the employees' burden of proof at the ILRB hearing to demonstrate antiunion animus in not offering reinstatement to both employees at the settlement conference.

¶ 14     The ILRB ruled that both employees should be reinstated with full back pay and benefits contingent on the employees authorizing, and now passing, the very background checks that their employer requested in the first place. So, more than 3½ years later, the employees are placed in almost the identical position they were in just before they were fired. They must sign the authorizations for the background checks before they can be reinstated or they can choose to be unemployed by continuing to refuse to sign them, only this time they will get paid for the years they were not working if they now sign the authorizations. The ILRB ruling provides that they will not be reinstated if they do not pass the background checks.

¶ 15     Cook County appeals the ILRB 2 to1 split decision issued by the ILRB on May 11, 2011.

¶ 16                         II. Standard of Review

¶ 17     The applicable standard of review in an administrative case such as a decision by the ILRB depends on whether the question is one of law, fact or a mixed question of law and fact. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). Any questions of law are subject to *de novo* review. *Illinois State Toll Highway Authority v. Illinois Labor Relations Board, State Panel*, 405 Ill. App. 3d 1022, 1028 (2010). This would include whether the agency applied a rule of evidence appropriately. *Julie Q. v. Department of Children & Family Services*, 2011 IL App (2d) 100643. Once the evidence is deemed admissible, the ILRB's evidentiary ruling on whether a comment made by an employee during settlement negotiations can be used as evidence to establish liability is reviewed for abuse of discretion. *Paxton-Buckley-Loda Education Ass'n v. Illinois Educational Labor Relations Board*, 304 Ill. App. 3d 343, 351 (1999).

¶ 18     The ILRB's factual finding that the employer was motivated by union animus in not offering to settle both union grievances by offering reinstatement to both employees rather than just one is reviewed under the manifest weight of the evidence standard. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). An ILRB factual determination is manifestly erroneous where the opposite conclusion is clear and evident. *City of Belvidere v. Illinois Labor Relations Board*, 181 Ill. 2d at 205. Mixed questions of law and fact will be reversed if they are clearly erroneous. "An agency decision

-5-

will be reversed because it is clearly erroneous only if the reviewing court, based on the entirety of the record, is 'left with the definite and firm conviction that a mistake has been committed.' [Citation.] While this standard is highly deferential, it does not relegate judicial review to mere blind deference of an agency's order." (Internal quotation marks omitted.) *SPEED District 802 v. Warning*, 242 Ill. 2d 92, 112 (2011) (quoting *Board of Trustees of the University of Illinois v. Illinois Labor Relations Board*, 224 Ill. 2d 88, 97-98 (2007)).

¶ 19    Both the ILRB and this court are bound to enforce a union arbitration award if the arbitrator acts within the scope of his or her authority and the award draws its essence from the parties' collective bargaining agreement. *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 304-05 (1996).

¶ 20                                  III. Analysis

¶ 21    The ILRB complaint for hearing again challenged the terminations of Joseph and Mitchner that were previously litigated and for which there was a final and binding arbitration decision, but this time the complaint alleged an unfair labor practice. It also challenged the fact that Mitchner was not offered reinstatement during a settlement conference held to attempt to resolve the union grievance before final arbitration. Cook County answered the complaints, in part, by raising the defense that there exists a final, binding arbitration decision wherein the arbitrator found that Cook County had just cause to discharge both Joseph and Mitchner for failing to authorize and submit to background checks.

¶ 22    Final and binding arbitration awards, such as the one upholding these two terminations, must be enforced, as stated earlier. *Id.* The ILRB's decision to reinstate both employees voids the arbitration award that found just cause to discharge both employees. No challenge is made to the arbitrator's authority when he entered his finding of just cause for the terminations.

¶ 23    Preliminarily, we acknowledge that the appellant, Cook County, did not raise its argument that the ILRB has no power or right to reinstate any employee terminated for just cause until its reply brief when it cited to the federal enabling statute for the National Labor Relations Board and quoted the following: "No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause." 29 U.S.C. § 160(c) (2006). Cook County did not raise the ILRB's purported inability to reinstate these two employees in its opening brief, nor did it cite to the federal statute in any manner. This argument challenges the ILRB's ability to order the remedy of reinstatement of the two Cook County employees who were fired for just cause. A liberal reading of the ILRB's and employees' responsive briefs leaves us wondering what Cook County was replying to and why it did not raise this argument in its opening brief. It is, at first blush, quite compelling. However, our own research to ensure it is not a dispositive jurisdictional issue indicates that the state statute outlining the powers of the ILRB deletes the above-quoted phrase from the state statute, which otherwise appears to mirror the federal

statute. 5 ILCS 315/11(c) (West 2008). The ILRB attorney, at oral argument, confirmed as much when replying orally to the reply brief's argument. Therefore, whether the ILRB went beyond its statutory power is not a jurisdictional issue in this case.

¶ 24    In failing to raise this issue until its reply brief, Cook County deprived the opposing parties of their right to respond to arguments and deprived this court of the benefit of their arguments. Therefore, we refuse to address any argument raised for the first time in the appellant's reply brief regarding Cook County's position that the ILRB cannot order the remedy of reinstatement for employees terminated for just cause. Cook County waived its right to argue this point where it was raised for the first time in the reply brief. Ill. S. Ct. R. 341(g) (eff. July 1, 2008); *Salerno v. Innovative Surveillance Technology, Inc.*, 402 Ill. App. 3d 490 (2010). However, a decision on this issue is not critical to a just resolution.

¶ 25    In a case before the ILRB, the party alleging an unfair labor practice has the burden of proof. There are four basic elements to an allegation of unfair labor practice, as follows: (1) the employee is engaged in protected union activity; (2) the employer had knowledge of the protected activity; (3) the employer took an adverse employment action against the employee; and (4) the employer's action was motivated by the employer's animus toward the employee's protected union activity. *City of Burbank v. Illinois State Labor Relations Board*, 128 Ill. 2d 335, 346 (1989). If a *prima facie* case of an unfair labor practice is established with these four elements, then the burden shifts to the employer to advance a legitimate reason for the adverse employment action and to show that he relied on that reason. The employer must establish that the employee would have suffered the adverse employment action notwithstanding his union activity. *Id.* The above scenario is simple enough to apply when it comes to the termination of the two employees in the instant case. Regardless of whether they can meet the four elements of their case based on their termination, their employer, Cook County, need only present the final, binding union arbitration decision that held it had just cause to terminate them. This decision is conclusive evidence of a justifiable termination.

¶ 26    The terminated employee, Mitchner, also charged an unfair labor practice which she alleged arose during the settlement conference that occurred after their termination where Joseph was offered reinstatement, but Mitchner was not. It is on this alleged unfair labor practice that the ILRB ruled.

¶ 27    As to the first element of the employees' proof on this issue, both employees engaged in protected union activity. Both Joseph and Mitchner had filed seven union grievances and an additional eighth grievance, jointly, all in one day. There is no dispute that their employer had knowledge of these grievances. However, while Cook County concedes that the employees' terminations were adverse employment actions, all parties are silent on whether, following termination, it is an adverse employment action to fail to offer reinstatement as a settlement proposal during a settlement conference to an employee who was terminated for just cause. Surely, a former employee has no right to such an offer, so it seems clear that an employer cannot be held liable for not offering a settlement to which no employee is entitled. Saying something objectionable during a settlement conference, even if actionable, would only entitle the employee to that which he would have been entitled to had the comment not been said. Neither the employees nor the ILRB cites any case holding that an employee who

-7-

is fired for just cause is ever entitled, as a matter of right, to an offer of reinstatement during a settlement conference.

¶ 28        Both the ILRB and the employees in their respective briefs characterize this case as a failure to reinstate. The facts of this case are radically different from those present in cases addressing a failure-to-reinstate issue. For example, cases have addressed failure-to-reinstate issues when an employer refuses to comply with the reinstatement provisions of an arbitration award or refuses to reinstate an employee following an extended medical leave. *Central Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 388 Ill. App. 3d 1060, 1066 (2009); *City of Loves Park v. Illinois Labor Relations Board State Panel*, 343 Ill. App. 3d 389 (2003); *City of Benton Police Department v. Human Rights Comm'n*, 160 Ill. App. 3d 55, 56 (1987). In this case, the employees had no identifiable right to reinstatement. The employer merely did not extend a settlement offer in the form of reinstatement to one employee, Mitchner. Neither the ILRB nor the employees cite to any case that holds that a failure to offer a settlement of reinstatement is a true failure-to-reinstate case. The ILRB and the employees fail to cite a case holding that failing to offer reinstatement as a settlement to an employee who was terminated for just cause constitutes an actionable adverse action.

¶ 29        However, we make no determination as to whether there is an adverse employment action by the employer in this instance. At the time of the settlement conference, both Joseph and Mitchner were terminated, former employees. To suffer the adverse employment action they complain of, one must establish that the employee has some right to a settlement offer of reinstatement that was violated by the employer. It is well settled in Illinois that a reviewing court should not normally search the record for unargued and unbriefed reasons to reverse a lower court ruling. *People v. Givens*, 237 Ill. 2d 311, 323-24 (2010); *People v. Rodriguez*, 336 Ill. App. 3d 1, 14 (2002). This axiom should apply with equal force to decisions of an administrative agency. This was a settlement conference. Both employees were terminated for the same reason. Both employees filed the same number of union grievances. Joseph was offered reinstatement. Mitchner was not offered reinstatement. We could speculate all day about why, but because the issue was not briefed by the parties, pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008), we will assume for purposes of this appeal that there was a showing of an adverse employment action because there can be no violations of sections 10(a)(1) or 10(a)(2) of the Illinois Labor Relations Act without it. *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board*, 175 Ill. App. 3d 191, 197 (1988); *Rockford Township Highway Department v. Illinois State Labor Relations Board*, 153 Ill. App. 3d 863, 872 (1987). We will discuss the remaining issues.

¶ 30        The Illinois Administrative Code provides that in administrative hearings "[t]he rules of evidence and privilege as applied in civil cases in the circuit courts of Illinois *shall* be followed." (Emphasis added.) 80 Ill. Adm. Code 1.233 (2012). However, section 11(a) of the Illinois Labor Relations Act states that "[i]n any hearing conducted by the Board, neither the Board nor the member or agent conducting the hearing shall be bound by the rules of evidence applicable to courts, except as to the rules of privilege recognized by law." 5 ILCS 315/11(a) (West 2008). However, the ILRB's own rules provide that "the Administrative

Law Judge will, insofar as practicable, apply the rules of evidence applicable in Illinois Courts." 80 Ill. Adm. Code 1200.130 (2012). It is the ILRB's rules that we find controlling in the ILRB hearing held before the ALJ. The ALJ and, subsequently, the ILRB panel should have applied the rules of evidence applicable in Illinois courts but failed to do so.

¶ 31    We find that the ILRB ruling to reinstate the instant employees, who were terminated for just cause, should be reversed for failure of admissible proof that an unfair labor practice had occurred. We are troubled by the majority ILRB members' willingness to adopt the ALJ's admission of evidence which ignored established rules of evidence when dealing with the admissibility of a comment reportedly made during a settlement conference to establish liability in this case.

¶ 32    Illinois courts generally do not admit matters concerning settlement and negotiations. *Liberty Mutual Insurance Co. v. American Home Assurance Co.*, 368 Ill. App. 3d 948, 960 (2006) (citing *Garcez v. Michel*, 282 Ill. App. 3d 346, 348-49 (1996)). The prohibition of admission of such evidence is based on two major concerns: (1) admitting evidence of settlements and negotiations contravenes public policy by discouraging litigants from settling their disputes without the need for trial; and (2) negotiations and settlements do not constitute an admission of guilt for any reason and are, therefore, irrelevant. *Liberty Mutual Insurance Co. v. American Home Assurance Co.*, 368 Ill. App. 3d 948, 960 (2006) (citing *Garcez v. Michel*, 282 Ill. App. 3d 346, 349 (1996)).

¶ 33    Illinois courts have routinely adopted and applied the federal evidentiary rule dealing with the admissibility of information and statements generated during settlement negotiations between the parties.

¶ 34    In 2010, Federal Rule of Evidence 408 provided:

"(a) Prohibited uses. Evidence of the following is not admissible–on behalf of any party–either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction:

(1) furnishing, promising or offering–or accepting, promising to accept, or offering to accept–a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim–except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

(b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

¶ 35    After the hearings in this ILRB case concluded, the Illinois Supreme Court enacted its own Rule of Evidence 408 involving what may and may not be admissible arising from settlement discussions had between the parties. Ill. R. Evid. 408 (eff. Jan. 1, 2011). Prior to its passage, the Illinois courts and administrative hearing officers relied on the federal rule and its accompanying case law. The Illinois Rule of Evidence 408 mirrors the Federal Rule 408, which our state courts have been applying to cases for years.

¶ 36    As if that were not enough, the ILRB's own rules provide for Federal Rule of Evidence 408 protection of statements made during settlement negotiations, as follows:

"The Board, as a matter of policy, encourages the voluntary efforts of the parties to settle or adjust disputes involving issues of representation, unfair labor practices, and interest and rights disputes. Any such efforts at resolution or conciliation and any resulting settlements shall be in compliance with the provisions, purposes and policies of the Act. Any facts, admissions against interest, offers of settlement or proposals of adjustment that have been submitted pursuant to this Section shall not be used as evidence of an admission of a violation of the Act." 80 Ill. Adm. Code 1200.120 (2012).

¶ 37    The parties failed to cite to this ILRB rule, which dictates how the ILRB should treat settlement negotiations. The majority ILRB decision failed to address its own rule on this issue. It merely concludes that Federal Rule of Evidence 408 is inapplicable because the "statement was made in the course of a discussion regarding settling grievances, not in the course of attempting to settle the charges in the instant case." *Joseph*, 27 PERI ¶ 57, at 251.We could not disagree more, especially because the alleged comment arose out of the identical facts and circumstances. Statements made during settlement negotiations do not lose their Rule 408 protection merely because a case ends. One cannot reconstitute a grievance claim into an ILRB unfair labor practice allegation by releasing an inadmissible Rule 408-protected statement made during settlement negotiations and use that protected statement as their sole basis of liability before the ILRB.

¶ 38    Federal Rule of Evidence 408 prohibits the admission into evidence of statements made during settlement negotiations as proof of the validity of a claim–in this case, an unfair labor practice. It is apparent that the terminated employees wanted to admit evidence of the human resource employee's alleged statement made during a settlement conference regarding why Cook County did not want to reinstate one employee, Mitchner, as an admission of the validity of their claim before the ILRB. Therefore, if Federal Rule of Evidence 408 applies, this evidence is inadmissible. Two members of the ILRB panel admitted the testimony of union representatives who recounted the statement they heard from the human resource employee that Mitchner would not be offered reinstatement because of her 14 or 15 union grievances. The human resources employee who purportedly made the statement did not testify before the ILRB, and therefore could not have been a "witness" for purpose of Federal Rule of Evidence 408(b)'s exceptions. Further, there is no proof he had any decision-making authority in this case. There was only evidence that Director Lewis-Calvin was the sole decision-maker regarding both employees. Therefore, even if the human resources employee's comment was admissible, it is irrelevant, as his antiunion animus is irrelevant. What is important is the antiunion animus of Director Lewis-Calvin, the sole decision-making supervisor. The human resource employee's comment during a settlement conference "sheds no light on the issue of whether [Director Lewis-Calvin] acted out of ill will toward the Union, and therefore does not constitute evidence that antiunion animus" was a factor in either Mitchner's or Joseph's firing or in Director Lewis-Calvin's decision not to offer reinstatement to Mitchner during a settlement conference. *Sears, Roebuck & Co. v. National Labor Relations Board*, 349 F.3d 493, 507-08 (7th Cir. 2003); *Sanchez*, 23 PERI ¶ 137 (IELRB 2007) (citing *Sears, Roebuck & Co. v. National Labor Relations Board*, 349 F.3d

493 (7th Cir. 2003)); *Service Employees International Union, Local 73*, 17 PERI ¶ 2040 (ILRB State Panel 2001)).

¶ 39 In fact, Rose Lewis-Calvin, the director of health services, testified that she was delegated the task of completing the background checks for all employees and was the official who made the decision to fire the two employees in 2008 for their failure to submit to these checks. It was never shown in any proceeding either before the ILRB or the prior union arbitration that anyone other than Director Lewis-Calvin had any responsibility or authority in these two terminated employees' cases, including whether they would be offered any settlement proposal at the settlement conference. There is no evidence that Director Lewis-Calvin ever spoke with the human resource employee in attendance at the settlement conference. There is no evidence that the employee was otherwise furnished with this reason from Director Lewis-Calvin as the true reason for not offering Mitchner reinstatement in settlement. This statement was clearly made during a settlement conference. The fact that the human resource employee agreed with an incorrect statement made by the union representatives when one queried if reinstatement was not offered to Mitchner because she filed 14 or 15 grievances (Mitchner actually filed 7 or 8 grievances–the same amount as Joseph) means little or nothing in the context of a settlement conference. After all, the settlement offer to reinstate Joseph did not mean that Cook County took the position that Joseph was not guilty of gross insubordination and not fired for just cause. Cook County pursued and won those claims during the union arbitration.

¶ 40 The ILRB majority cited *Uforma/Shelby Business Forms, Inc. v. National Labor Relations Board*, 111 F.3d 1284, 1293 (6th Cir. 1997), to justify their admission of this statement about one of the two employees made by a nondecision-maker during settlement negotiations. However, the *Uforma/Shelby* case is an extreme example where the employer's agents, who were decision-making managers, made threats to close the business forms production plant to retaliate against the union for pursuing its efforts to unionize. There were no claims of threats in this case, and the ILRB should have weighed the probative value of the hearsay testimony against the overarching purpose of both the federal and state Rule of Evidence 408, which is to encourage settlements. *Sterling Savings Bank v. Citadel Development Co.*, 656 F. Supp. 2d 1248, 1255 (D. Or. 2009) (and cases cited therein).

¶ 41 On appeal, the ILRB argues that the settlement conference involved numerous grievances and that this statement by the human resources employee occurred after they had moved on to other grievances and is, therefore, not protected by Federal Rule of Evidence 408. This argument falls flat. This court must look to the totality of the circumstances surrounding the settlement conference. There was no hard and fast procedural rule for this settlement conference where negotiations ended on one grievance the minute another grievance was discussed. The appellee's argument is that because another grievance was being discussed, the human resource employee's statement regarding this grievance was no longer a protected settlement conference statement. The ebb and flow of a settlement conference of this nature, where a large number of grievances are up for settlement negotiations, by its very nature, does not provide a basis to exclude the statement at issue from the protection of Rule 408.

¶ 42 The collective bargaining agreement required a settlement conference prior to each step of the grievance procedure that must be followed (article XI, section 11.5, grievance

procedure steps and section 11.9, grievance meetings). A prelude to the grievance procedures expresses "the intention of both parties to discuss and resolve disputes informally and attempt to settle them at the lowest level possible" (see article XI, section 11.1, the grievance procedure). The settlement offer to reinstate Joseph but not Mitchner came before the arbitration on the two terminations was held. The arbitration decision is a postoccurrence, independent basis to not offer to settle the termination by reinstatement. The arbitrator could have ruled in favor of the employees and they would have then been reinstated. The only adverse action Mitchner suffered as a result of no settlement offer of reinstatement was merely to go to arbitration on her termination, something that was scheduled to occur if the settlement meeting was not successful. The remedy ordered by the ILRB went far beyond a make-whole remedy that would put the parties in the same position they would have been in even if there was admissible evidence that an unfair labor practice had occurred during settlement talks. *Paxton-Buckley-Loda Education Ass'n v. Illinois Educational Labor Relations Board*, 304 Ill. App. 3d 343, 353 (1999).

¶ 43    In any event, both the federal and state Rule of Evidence 408 prohibit us from impliedly implementing such a procedural rule which would mandate serially discussing each grievance in isolation during settlement conferences where a bulk of grievances are up for discussion. The purpose of the Federal Rule of Evidence 408 is to encourage a settlement environment where people can discuss the issues freely and to their advantage without risk of later litigation for what they may have said or not said, or offered or not offered. The premise of Rule 408 is that settlement talks could be chilled if such discussions could later be used as admissions of liability, especially arising out of the same case being discussed.

¶ 44    We find that admission of the union representatives' testimony that recounted the settlement conference statement they heard made by the Cook County human resource employee are violative of Federal Rule of Evidence 408 and the ILRB rule on settlement talks (80 Adm. Code 1200.120 (2012)). The sole substantive basis used to establish the validity of the unfair labor practice claim was the statement made by a human resource employee at the settlement conference. This is prohibited by both the language and intent of Federal Rule of Evidence 408. The ILRB abused its discretion in admitting the testimony of union representatives recounting a statement made by the Cook County human resource employee made during settlement negotiations as proof of liability of an unfair labor practice that the failure to offer reinstatement to Mitchner during settlement negotiations was born out of antiunion animus. Such a ruling by the ILRB, if allowed to stand, risks putting the many participants in these workplace settlement conferences on grievances in the very jeopardy that Rule 408 was designed to avoid. It is clear that litigation would multiply if off-the-record comments made during grievance settlement negotiations could be used as evidence of liability before the ILRB. It is a dangerous precedent that we are loath to establish in this case.

¶ 45    In any event, even if the settlement statement were admissible under Federal Rule of Evidence 408, we fail to understand how it applies in any way to Joseph and provides the ILRB with reason to reinstate the terminated employee, Joseph, who was offered reinstatement during the settlement conference. The majority panel does not explain its rationale for reinstating both employees where the statement of the human resource employee

only implicated Mitchner.

¶ 46    Additionally, even if the statement about Mitchner were admissible, we agree with the dissenting panel member, who succinctly stated that "the single bit of evidence [was] insufficient to bear the Charging Parties' burden." *Joseph*, 27 PERI ¶ 57, at 253 (Member Anderson concurring in part & dissenting in part).

¶ 47    One of Illinois's most fundamental interests has always been the welfare and protection of minors. *County of McLean v. Humphreys*, 104 Ill. 378, 383 (1882). This public policy was reaffirmed in *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 311-17 (1996), where our supreme court held that even parental rights are secondary to Illinois's strong interest in protecting children from the potential for abuse or neglect and agencies charged with the care of children must be allowed the necessary tools to prevent abuse and neglect. It follows that an employee's rights are secondary, as well. The simple background checks ordered by the TA of all employees at the JTDC were ordered to assist in implementing this public policy of protection of minors, especially after the allegations of child abuse were made in a federal lawsuit.

¶ 48    The ILRB decision is, therefore, reversed because it is against the manifest weight of the evidence. The entire unfair labor practice claim was based on one piece of inadmissible evidence. When the statement is removed from the scales of justice, the employees have no weight on their side and, therefore, no case. The decision of the ILRB recounting their factual determinations is also contrary to the manifest weight of the evidence. Either with or without this evidence, the opposite conclusion is both clear and evident. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998).

¶ 49    We make one final point, as it speaks to the genesis of this entire litigation. We note that the employees' attorney argues in his brief that "[t]he ILRB's remedy of reinstatement with backpay is appropriate" because the employee's "reinstatement in no way endangers children at the JTDC because the ILRB's order requires that both Mitchner and Joseph first submit to and pass the CANTS/LEADS checks before they are reinstated." Simple logic dictates that this prerequisite to any implementation of the ILRB's reinstatement order demonstrates that his clients' refusal to comply with the background checks endangered children at the JTDC and such noncompliance could not be tolerated by the TA any more than by the ILRB.

¶ 50                                    IV. Conclusion

¶ 51    We conclude that where, as here, there exists no admissible evidence to support the ILRB's ruling, that finding cannot be affirmed. We further hold that even if the statement of the human resource employee was admissible, that single statement was insufficient to prove Cook County acted with antiunion animus in refusing to offer reinstatement to Mitchner during a settlement conference and the ILRB's decision to the contrary is against the manifest weight of the evidence. Accordingly, the decision of the Illinois Labor Relations Board is reversed.

¶ 52    Reversed.